1998-NMCA-178

970 P.2d 154

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Janet Cynthia BONHAM, Defendant–Appellant.**

**No. 18,533.**

Court of Appeals of New Mexico.

Oct. 3, 1998.

Certiorari Denied, Nos. 25,428, 25,434, Nov. 19, 1998.

384

Tom Udall, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

FLORES, Judge.

I. *INTRODUCTION*

{1} Janet Cynthia Bonham (Defendant) was charged with two counts of aggravated battery with a deadly weapon against a household member, and, in the alternative, one count of aggravated battery against a household member causing great bodily harm. A jury convicted Defendant of one count of aggravated battery with a deadly weapon (a trivet), and also convicted Defendant of the lesser included offense of aggravated battery not causing great bodily harm. Defendant was acquitted of the second count of aggravated battery with a deadly weapon (an electric fan). The victim was Defendant's husband, Fred Gallegos (Victim).

{2} Although it is unnecessary to know the details of how Victim became injured in order to understand this case, one set of facts is significant. On the day of the incident, Victim told various police officers and doctors that he had been attacked by his wife, Defendant. Victim also testified before the grand jury that Defendant attacked him with an electric fan and a trivet (which Victim referred to as a "hot plate"). At trial, however, Victim changed his story and testified that he accidentally fell onto the trivet and pulled the electric fan onto himself during an argument with Defendant. Victim's trial testimony was consistent with Defendant's testimony. Other facts will be discussed as they become relevant to our discussion of the issues raised by Defendant.

{3} Defendant appeals her convictions, arguing that: (1) the trial court erred by allowing the police officers to testify as to statements made by Victim to the police at the time of his injury; (2) the trial court erred by refusing to strike a juror for cause; (3) Defendant was prejudiced when the prosecutor asked Defendant what crimes she had previously been convicted of, after the court had ruled that question impermissible; and (4) the jury instruction eliminated an essential element of aggravated battery with a deadly weapon. We affirm on the first three issues and reverse on the fourth issue. Thus, we remand for a new trial on the aggravated battery with a deadly weapon charge. Defendant's conviction of aggravated battery not causing great bodily harm is affirmed.

II. *DISCUSSION*

*Excited Utterances*

{4} According to Defendant, the trial court erred by allowing several police officers to testify that Victim stated that Defendant struck him with a trivet and caused his injuries. *See* Rules 11–801, –802 NMRA 1998. The trial court admitted the police officers' testimony under the excited utterances exception to the hearsay rule. *See* Rule 11–803(B) NMRA 1998. Defendant now argues that Victim's statements are not excited utterances because they were made in response to direct police questioning, and were, therefore, not spontaneous. The State makes three arguments in response: (1) that Defendant did not preserve the error with regard to two of the officers; (2) that Victim's statements were excited utterances even though they were made in response to police questioning; and, alternatively, (3) that even if the statements should have been excluded as hearsay, the admission of Victim's statements was harmless error because the testimony was cumulative.

{5} An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 11–803(B). The question raised in this case is whether Vic-

tim's statements were made spontaneously, that is, under the stress of excitement caused by the startling event, when his statements were made in response to direct police questioning. Although we acknowledge that a statement made in response to a question may indicate that the statement was the result of reflection, we decline to adopt a bright-line rule that every statement made in response to a question, whether by police or others, is not an excited utterance. Rather, we follow our general approach to excited utterances, which requires the trial court to consider the particular circumstances of each case to determine whether the statement "was the result of reflective thought" or whether it was rather a spontaneous reaction to the exciting event. 2 John William Strong, *McCormick on Evidence* § 272, at 220 (4th ed.1992); *see, e.g., State v. Lopez,* 1996–NMCA–101, ¶ 29, 122 N.M. 459, 926 P.2d 784 ("The admissibility of an excited utterance as hearsay depends upon the circumstances of the case."); *State v. Maestas,* 92 N.M. 135, 141, 584 P.2d 182, 188 (Ct.App. 1978). This approach is consistent with our case law, which has upheld the admission of statements made in response to questions when the surrounding circumstances demonstrated a lack of reflection on the declarant's part. *See State v. Robinson,* 94 N.M. 693, 697–98, 616 P.2d 406, 410–11 (1980); *Maestas,* 92 N.M. at 139–41, 584 P.2d at 186–88.

{6} In deciding whether hearsay should be admitted under the excited utterance exception, the trial court should consider a variety of factors in order to assess the degree of reflection or spontaneity underlying the statement. These factors include, but are not limited to, how much time passed between the startling event and the statement, and whether, in that time, the declarant had an opportunity for reflection and fabrication; how much pain, confusion, nervousness, or emotional strife the declarant was experiencing at the time of the statement; whether "the statement was self-serving [; and whether the statement was] made in response to an inquiry[.]" 2 *McCormick on Evidence* § 272, at 219 (footnote omitted).

{7} We also note that the trial court has wide discretion in determining whether the utterance was spontaneous and made under the influence of an exciting or startling event. *See Lopez,* 1996–NMCA–101, ¶ 13, 122 N.M. 459, 926 P.2d 784 (whether "out-of-court statements were made under factual circumstances that bring them within exceptions to the hearsay rule ⋯ is reviewed for abuse of discretion."); *Robinson,* 94 N.M. at 698, 616 P.2d at 411 ("A trial court is allowed wide discretion in determining whether in fact a declarant is still under the influence of the startling event when the statement is made."). We will not reverse the trial court's decision to admit evidence without a clear abuse of discretion. " 'An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason.' " *State v. Apodaca,* 118 N.M. 762, 770, 887 P.2d 756, 764 (1994) (citations omitted).

{8} In this case, the trial court's decision to admit Victim's responses to the first two police officers, Sergeant Ward and Officer Inhoff, as excited utterances was not an abuse of discretion because Victim's statements were made within moments of the attack, while Victim was still bleeding, in pain, and in mild shock, and while Victim was still within the proximity of his attacker. Moreover, the police officers did not engage Victim in prolonged interrogations. Rather, each officer simply asked Victim: "Who did this to you?" In each case, Victim responded by identifying Defendant. Thus, we conclude that the trial court did not abuse its discretion in finding that Victim's statements, to these two officers, concerning his attacker were made under the stress of the attack, and were therefore excited utterances. *Cf. People v. Centers,* 141 Mich.App. 364, 367 N.W.2d 397, 401 (Mich.Ct.App.1985), *rev'd on other grounds* 453 Mich. 882, 554 N.W.2d 10 (Mich.1996) (detailed statement produced by question and answer session between victim and police officer, while in isolation, is "exactly the opposite of spontaneous and unreflecting").

■ {9} The court's decision to admit Victim's responses to the questions of Detective Aubuchon and Officer Otero, however, was an abuse of discretion. By the time Victim spoke with each of these two officers, he was already in the hospital and a considerable period of time had passed since Victim was attacked. Indeed, in the case of Detective Aubuchon, the last officer to speak with Victim, approximately three hours had passed between the time of the attack and the time of the interview. In addition, during these later interviews, Victim was no longer under the threat of further harm, had already received medical care, and appeared alert and awake despite his injuries. Given the undisputed evidence regarding the passage of time and Victim's alertness, at this point Victim could no longer have been under the stress of the startling event and must have had ample time to reflect on what had happened to him. Thus, we believe the trial court abused its discretion in concluding that Victim's statements to these two police officers were excited utterances.

■ {10} However, "[n]ot all erroneously admitted hearsay will automatically warrant reversal. There still must be a showing that its admission affected the substantial rights of the objecting party ." *Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 733, 779 P.2d 99, 110 (1989). We cannot say that the admission of hearsay by the second two officers affected the substantial rights of Defendant because the hearsay evidence was cumulative. *See State v. Woodward,* 121 N.M. 1, 5, 908 P.2d 231, 235 (1995) (the erroneous admission of evidence is harmless error if evidence is cumulative); *Gallegos,* 108 N.M. at *733–34,* 779 P.2d at 110–11 (same).

{11} Here, Sergeant Ward, Officer Inhoff, Officer Ryan, and two doctors testified that Victim stated that Defendant caused his injuries. Because the doctors' testimony was admissible as a statement for purposes of medical diagnosis or treatment, *see* Rule 11–803(D) NMRA 1998, and because the testimony of the first two police officers falls within an exception to the hearsay rule, *see* Rule 11–803(B), Victim's statements were already properly before the jury.

■ {12} In addition, Officer Ryan, who arrived at the scene of the incident at the same time as Officer Inhoff, testified on cross-examination that Victim told her that Defendant struck him with a fan and a trivet. Although Officer Ryan's testimony may or may not satisfy the excited utterance exception, and therefore, may or may not have been properly before the jury, Defendant cannot now complain of error in this regard. Officer Ryan was a prosecution witness. However, the State never asked Officer Ryan about Victim's statements. Rather, it was defense counsel that specifically asked Officer Ryan what Victim had told her. Even if admission of Officer Ryan's testimony was error, we will not now hear Defendant complain about the error she invited. *See State v. Young,* 117 N.M. 688, 690, 875 P.2d 1119, 1121 (Ct.App.1994) ("[T]o allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice."). Thus, Officer Ward's and Detective Aubuchon's testimonies were cumulative of Officer Ryan's testimony.

{13} Finally, Victim's grand jury testimony, in which Victim stated that Defendant struck him with a small fan and a hot plate or trivet, was read to the jury. Thus, the testimonies of Officer Otero and Detective Aubuchon merely repeated facts already properly admitted into evidence. We conclude, therefore, that it was harmless error to allow Officer Ward and Detective Aubuchon to testify as to Victim's statements because the evidence was cumulative. *See Woodward,* 121 N.M. at 5, 908 P.2d at 235; *Gallegos,* 108 N.M. at 733–34, 779 P.2d at 110–11.

{14} Because we determine that the admission of Victim's out-of-court statements to Officer Ward and Detective Aubuchon was harmless error, we need not address the State's argument that Defendant did not preserve this error.

*The Trial Court Did Not Abuse Its Discretion by Refusing to Strike a Juror*

{15} Defendant argues that the trial court abused its discretion by refusing to strike a juror for cause when the juror was

partial to the police. *See State v. Hernandez,* 115 N.M. 6, 22, 846 P.2d 312, 328 (1993). We disagree.

{16} During voir dire, the juror made the following two statements:

I think I could judge the evidence, I hope, fairly, but—and I think I can judge it fairly, but I do have a feeling that our police officers should be trained investigators, and I might give a little more weight, depending on the evidence, depending on what they're testifying about.

Same thing that I said before, that I felt that our police officers should be—I say "should be," trained investigators, and their testimony on the facts and on the evidence should be believable. I'm not saying that I would, necessarily, but I might give a little more weight on their testimony as to actual facts.

{17} At no time, then, did the juror say that he would, categorically, give more weight to the testimony of police officers. Rather, the juror's statements acknowledge that, in certain circumstances, police officers have specialized training that might render their testimony particularly reliable or informed. The juror's statements simply recognize that the testimony of the police regarding matters within their special training and expertise may deserve greater weight than the testimony of lay persons.

{18} Moreover, the juror expressly stated that he would judge the evidence fairly. During questioning by defense counsel concerning the capacity of the jurors to listen to and evaluate the evidence fairly and with an open mind, the juror in question answered that he would be a good juror because of his experiences analyzing data and making decisions. The trial court here could properly rely on the juror's assertions that he would be fair and impartial because those assertions were made voluntarily and not at the prompting of the court or counsel. *See State v. Baca,* 111 N.M. 270, 275, 804 P.2d 1089, 1094 (Ct.App.1990) ("[I]f a juror rehabilitates his or her own bias, the trial court may properly deny challenges for cause ... absent undue prompting from the court or counsel."); *cf. State v. Sims,* 51 N.M. 467, 471, 188 P.2d 177, 179 (1947) (Trial court

abused its discretion by not striking a juror for cause when the juror initially disclosed his bias, but "under skillful questioning from the bench he finally said that he would return a verdict in accordance with the law and the evidence.").

{19} Because the juror here gave balanced and honest answers concerning his ability to weigh and consider the testimony of police officers and because the juror stated that he could judge the evidence fairly, the trial court could reasonably believe that the juror would be impartial. Therefore, the trial court's refusal to strike the juror was not " 'clearly against the logic and effect of the facts and circumstances before [it],' " and the trial court did not abuse its discretion. *State v. Pettigrew,* 116 N.M. 135, 140, 860 P.2d 777, 782 (Ct.App.1993) (quoting *State v. Hargrove,* 81 N.M. 145, 147, 464 P.2d 564, 566 (Ct.App.1970)).

*Defendant Was Not Prejudiced by the Prosecutor's Improper Question*

{20} Prior to trial, the court granted Defendant's two motions in limine. Under the first motion, the prosecutor was precluded from asking the nature of Defendant's prior convictions. Under the second motion, the prosecutor could not inquire into Defendant's prior bad acts. However, the trial court stated that she would reconsider her rulings if Defendant "opened the door."

{21} On direct examination, Defendant testified that she had recently contacted her parole officer. In addition, Defendant's parole officer was a witness for the defense. Thus, the jury was aware that Defendant had been convicted of some crime or crimes in the past. On cross-examination, after Defendant again mentioned that she was on parole, the prosecutor asked, "And what are you on parole for?" Defense counsel objected to the question before Defendant answered and the trial court sustained the objection. Defense counsel did not request a cautionary instruction and none was given. No one ever testified as to the crimes for which Defendant had been previously convicted.

{22} Defendant now argues that the prosecutor's question, which violated the

trial court's pretrial ruling, was misconduct amounting to fundamental error that requires reversal of her convictions. We disagree.

{23} For error to be reversible, it must be prejudicial. *See State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App.1994). Defendant's suggestion that she was prejudiced by the prosecutor's question is untenable. Nothing in the record indicates that the outcome of the case would have been different had the offending question not been asked. The question divulged nothing new about Defendant. The jury was already aware that Defendant had a prior conviction or convictions when the question was asked. In addition, the question revealed nothing impermissible under the court's pretrial rulings, which allowed the jury to hear evidence that Defendant had prior convictions, but not the nature of those convictions. Thus, no inadmissible evidence ever reached the jury.

{24} In effect, then, Defendant's argument asks us to presume prejudice from the mere asking of the improper question. We will not make such a presumption. *See In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Although there may be cases where a question is so suggestive that it is prejudicial, this is not such a case. The question here suggested nothing about the nature or severity of Defendant's prior crimes. Because Defendant has failed to show how the unanswered question changed the outcome of her case, we find no reversible error. *See State v. Clark*, 108 N.M. 288, 311, 772 P.2d 322, 345 (1989) (without a showing of prejudice, the doctrine of fundamental error is not implicated), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 659, 789 P.2d 603, 607 (1990).

*Jury Instruction*

{25} Defendant argues that her conviction of aggravated battery with a deadly weapon should be reversed because the jury was not properly instructed on an essential element of the offense. According to Defendant, the instruction defined a trivet as

a deadly weapon, thereby usurping the jury's function of deciding whether a trivet is a deadly weapon. We agree.

{26} The jury was instructed, in relevant part, as follows:

For you to find the defendant guilty of aggravated battery against a household member with a deadly weapon as charged in Count 1, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. *The defendant did touch or apply force* to Fred Gallegos, a household member, *with a hot plate or trivet frame, an instrument or object which, when used as a weapon, could cause death or very serious injury* [.] (Emphasis added.)

{27} If the jury read paragraph 1 of the instruction in accordance with basic rules of grammar, the jury would necessarily conclude that the trivet was an object which could cause death or very serious injury. The jury would do so because "instrument or object which, when used as a weapon, could cause death or very serious injury" is an appositive expression that explains "hot plate or trivet frame." William A. Sabin, *The Gregg Reference Manual* ¶ 148 (8th ed.1996) (an appositive expression provides explanatory information about the noun or noun phrase that precedes it). Thus, the grammatical structure of the sentence informed the jury that the hot plate or trivet was a deadly weapon.

{28} Given the grammatical structure of this instruction, the jury would not have understood that it was required to decide whether a hot plate or trivet frame was an object that could cause death or very serious injury. Because, under this interpretation of the instructions, the jury did not make such a determination, Defendant was convicted of aggravated battery with a deadly weapon without proof of all of the essential elements of the crime. This is reversible error. *See State v. Parish*, 118 N.M. 39, 44, 878 P.2d 988, 993 (1994) ("A jury instruction which does not instruct the jury upon 'all questions of law essential for a conviction of any crime submitted to the jury,' is revers-

ible error.") (citation omitted). Furthermore, we need not consider the instructions as a whole because the error found here renders the instruction facially erroneous, and, facially erroneous instructions cannot be cured by subsequent correct instructions. *See id.* at 41, 878 P.2d at 990 ("[I]f an instruction is facially erroneous it presents an incurable problem and mandates reversal."). Thus, we reverse and remand for a new trial on the charge of aggravated battery with a deadly weapon.

### III. *CONCLUSION*

{29} Because the jury was improperly instructed on the elements of aggravated battery with a deadly weapon, we reverse and remand for a new trial on that charge. We affirm the trial court's determination that Victim's out-of-court statements to Officer Inhoff and Sergeant Ward were excited utterances and thus admissible under the hearsay exception. We hold that the trial court's admission of Victim's remaining out-of-court statements was harmless error. Finally, we affirm the trial court's decision not to remove a juror for cause and hold that Defendant was not prejudiced by the prosecutor's improper question. Thus, we affirm Defendant's conviction of aggravated battery not causing great bodily harm.

{30} **IT IS SO ORDERED.**

APODACA and ARMIJO, JJ., concur.