1999-NMCA-105

987 P.2d 1156

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mateo HERNANDEZ, Defendant–
Appellant.**

**No. 19,089.**

Court of Appeals of New Mexico.

June 7, 1999.

Certiorari Denied July 28, 1999.

Patricia A. Madrid, Attorney General, Patricia Gandert, Ass't Attorney General, Santa Fe, for Appellee.

John A. McCall Law Office of John A. McCall, Albuquerque, for Appellant.

## OPINION

PICKARD, Chief Judge.

{1} Defendant was convicted, after a bench trial, of breaking and entering, NMSA 1978, § 30–14–8 (1981), false imprisonment, NMSA 1978, § 30–4–3 (1963), and aggravated battery, NMSA 1978, § 30–3–5 (1969). He now appeals, claiming that the trial court improperly admitted evidence and erred in finding him guilty of breaking and entering

as a lesser-included offense of aggravated burglary. We affirm on the evidentiary issues and reverse Defendant's conviction for breaking and entering.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} A grand jury indicted Defendant for aggravated burglary, two counts of child abuse, false imprisonment, and aggravated battery. Because the trial court dismissed the child-abuse charges on directed verdict, those charges are not at issue on appeal.

{3} The incidents underlying the indictment were alleged to have occurred on June 22, 1995. Shortly before that date, Defendant and Lilly Castillo (Castillo) ended their romantic relationship. On the morning of June 22, Defendant went to Castillo's house. Defendant and Castillo gave conflicting testimony as to what happened that morning.

{4} Castillo testified that she had broken off her relationship with Defendant a week before the incident. She stated that she and her two children were all sleeping in her bed when she heard the front door being opened downstairs. Castillo indicated that Defendant entered the bedroom, tried to wake her, and dumped beer on her and the children. According to Castillo, Defendant was intoxicated and smelled of alcohol. An argument ensued. Castillo testified that in the course of the argument Defendant straddled her on the bed, that she struggled against him, and that he touched her breasts and tried to undress her. She stated that she pushed Defendant off of her, but that he had her hair in his hand, so that when he was pushed off he also pulled out a section of her hair. Photographs showing a section of hair the size of a quarter or half-dollar missing from Castillo's temple were introduced at trial.

{5} Castillo testified that she tried to leave the bedroom, but Defendant blocked the door and detained her for about five minutes. She said that once she escaped him, he asked her not to call the police if he agreed to leave. Castillo called the police from a pay phone. She estimated that it was 20 or 30 minutes before they arrived. The two responding officers testified at trial. Both testified to what Castillo told them when they arrived at her home. Defendant objected to the officers' testimony as hearsay, but the trial court overruled the objection.

{6} The first officer testified that Castillo was extremely upset and crying "off and on." He further noted that the children were less upset and that one child's clothes were wet. He testified also that some of Castillo's hair was missing. He was unable to testify with certainty about the condition of the door or whether the lock or doorjamb had been damaged. The second officer testified similarly, indicating that Castillo's shirt and the bed were wet, and that there was minor damage to the door that made it difficult to close, but that there was no splintering on or around it.

{7} Defendant was the sole witness in his own defense. He testified that he had broken off the relationship. He stated that Castillo had called him on June 21, asking him to come to her house. Defendant said he stayed up almost all night playing cards and then went to Castillo's house near dawn. He testified that he was not intoxicated and volunteered that he had not had a drink in a long time. The State successfully argued for the opportunity to cross-examine Defendant about his prior drinking, noting that his rap sheet indicated several convictions for driving while intoxicated (DWI).

{8} Defendant testified that he knocked on the door and Castillo let him in. He stated that the door had been damaged for a few weeks. He testified that they went to the bedroom, and that Castillo poured beer on him in the course of an argument. According to Defendant, the children were in their own bedroom, and Castillo tore her own hair out in anger. He indicated that he left of his own accord, and that Castillo yelled at him, "Watch what I'm going to do to you." On cross-examination, the State asked Defendant about a prior domestic violence conviction. Defendant objected on several grounds, and the trial court overruled his objection. The court noted that Defendant had opened the door to the issue.

{9} The trial court found Defendant guilty of false imprisonment, aggravated battery, and breaking and entering. Defendant objected to the last verdict, arguing that it was not a lesser-included offense of aggravated burglary, and therefore the court could

not consider it sua sponte. The trial court rejected Defendant's argument, stating, "I am not stuck with anything other than what I think is legally supported by the evidence."

## II. DISCUSSION

A. *The Trial Court Did Not Err in Permitting Police Officers to Testify About What Castillo Told Them When They Responded to Her 911 Call.*

{10} Assuming an adequate factual basis, the question of whether an out-of-court statement was made under circumstances that permit an exception to the hearsay rule is reviewed for abuse of discretion. *See State v. Lopez*, 1996–NMCA–101, ¶ 13, 122 N.M. 459, 926 P.2d 784. We have acknowledged that the trial court has broad discretion in determining whether a statement was an excited utterance as defined by Rule 11–803(B) NMRA 1999. *See State v. Bonham*, 1998–NMCA–178, ¶ 7, 126 N.M. 382, 970 P.2d 154; *State v. Robinson*, 94 N.M. 693, 698, 616 P.2d 406, 411 (1980).

{11} "Excited utterance" is defined by Rule 11–803(B) as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The trial court's assessment of whether a statement meets this definition should be guided by consideration of a variety of factors. As articulated in *Bonham*, these factors include (1) the time lapse between the startling event and the statement, (2) whether the declarant had an opportunity to fabricate the statement, (3) the mental and physical state of the declarant at the time of the statement, (4) whether the statement was self-serving, and (5) whether the statement was made in response to an inquiry. *See Bonham*, 126 N.M. 382, 970 P.2d 154, 1998–NMCA–178, ¶ 6.

{12} In this case, Defendant objected to hearsay testimony by the police officers. The statements at issue were those in which Castillo recounted the incidents with Defendant to the responding officers. Castillo had already testified that it took the police 20 to 30 minutes to respond to her 911 call. In laying a foundation for the proposed hearsay testimony, Officer Accardi testified that upon first contact with Castillo, she was "extremely upset." He also indicated that "[s]he was crying off and on and she was real excited." The officer also indicated that "a large portion of [Castillo's] hair was pulled out" of the left side of her forehead. He noted that the one child he saw was also upset, but not as upset as his mother.

{13} When the officer again began to relate Castillo's statements, Defendant again objected, citing *Lopez* and arguing that there were constitutional limitations on the use of such testimony. The court answered, "I assume that we are talking about excited utterance, but still she was here. She was subject to cross-examination. She told her story." The State echoed the argument that Castillo's availability rendered the constitutional problem of confrontation, as described in the *Lopez* case, inapplicable.

{14} Defendant went on to make a specific hearsay objection based on *Lopez*. He argued that Castillo's statements were not properly construed as excited utterances because they were answers to police questions, rather than spontaneous declarations. After hearing Defendant's full argument, the trial court again overruled the objection.

{15} We believe that there was adequate factual support for the trial court's ruling. We have held that there is no specific time frame in which a statement must be made in order to fall under Rule 11–803(B). *See Lopez*, 1996–NMCA–101, ¶ 31, 122 N.M. 459, 926 P.2d 784. Under certain circumstances, it is reasonable to believe that an individual could be speaking under the stress of a traumatic event 20 minutes after that event. Although the fact that the statements were made to police can also undermine their spontaneity, the mere fact that the statements were responses to questions does not necessarily defeat a finding that they were excited utterances. *See Bonham*, 1998–NMCA–178, ¶ 8, 126 N.M. 382, 970 P.2d 154. Here, the trial court could have reasonably believed that the circumstances surrounding Castillo's statement included that she was awakened at dawn by Defendant's breaking into her home, she had been assaulted and physically injured, she was still "extremely upset" and "real excited" when the police arrived, and at least one of her children was

also upset. While these circumstances did not necessitate a finding of excited utterance, they were sufficient to support such a finding and are therefore sufficient for us to uphold the trial court's exercise of its broad discretion.

### B. *The Trial Court Did Not Err by Allowing the Prosecutor's Use of Defendant's Prior Convictions.*

 {16} Generally, evidence of other wrongs may not be used to prove that a person acted in conformity with a particular trait of character. *See State v. Wrighter,* 1996–NMCA–077, ¶ 7, 122 N.M. 200, 922 P.2d 582. However, such evidence may properly be used for other purposes. *See State v. Landers,* 115 N.M. 514, 517–20, 853 P.2d 1270, 1273–76 (Ct.App.1992). In particular, a witness may not make false claims, leaving a misimpression with the fact-finder, and expect to be insulated from proof to the contrary, even if that proof encompasses evidence of misconduct. *See State v. Sacoman,* 107 N.M. 588, 594, 762 P.2d 250, 256 (1988) (holding that evidence of defendant's distribution of cocaine was properly admitted when defendant claimed that he was only on the periphery of drug activities because "[i]t is proper for the State to correct a false impression generated by the defendant").

{17} Defendant claims that evidence of his prior DWI and domestic violence convictions was erroneously admitted. As to the DWI, we first note that the State never sought to introduce evidence of any conviction. The factual basis for this issue is as follows. Castillo testified that Defendant was drunk and smelled of alcohol during the incident. During her opening statement, counsel for Defendant had admitted that Defendant had arrived at Castillo's apartment that morning "with a beer in his hand, obviously having been up drinking, out carousing all night long." On cross-examination, however, Defendant testified that he was not intoxicated on the morning in question. He also stated that he had not had a drink in more than two years. Defendant objected when the State began to question him about his drinking history. In arguing against the objection, the State indicated that Defendant had a history of DWI's, including an arrest for aggravated DWI in May 1995, one month before this incident. The State argued that this evidence related to Defendant's credibility. The trial court gave the State permission to briefly explore Defendant's prior contacts with drinking. The State, however, never introduced or otherwise referred to the DWI convictions.

 {18} The trial court's decision to allow the State to explore Defendant's prior drinking was proper. Once Defendant stated that he had not had a drink in two years and that his fights with Castillo were not drinking-related, it was reasonable to allow the State to explore Defendant's drinking history. *Cf. State v. Bazan,* 90 N.M. 209, 212–13, 561 P.2d 482, 485–86 (Ct.App.1977) (permitting the state to correct the defendant's misrepresentation of the transcription of a police interview with the defendant by reading a limited portion of the transcript). The trial court permitted exploration of Defendant's drinking history for this express purpose.

 {19} With regard to the domestic violence conviction, Defendant was asked on direct examination whether he had pulled out Castillo's hair. He answered, "No, ma'am. She used to do that when she would get mad at me. That was not the first time she had done it. She would always bang her head.... [She] always did that. She would hit herself." Based on this testimony, the trial court found that Defendant opened the door to the discussion of prior domestic violence.

{20} The trial court's assessment was not an abuse of discretion. Defendant's testimony raised the issue of prior arguments and prior violence between Castillo and Defendant. Once Defendant implied that any physical harm to Castillo was the result of her injuring herself, the State was entitled to introduce evidence of prior domestic violence to correct this misrepresentation. Therefore, the trial court did not abuse its discretion by concluding that Defendant opened the door concerning prior domestic violence. *Cf. State v. Andrade,* 1998–NMCA–031, ¶ 21, 124 N.M. 690, 954 P.2d 755 (holding that the defendant opened door to discussion of prior violence against victim by volunteering that he had served jail time for one such attack).

{21} We note that Defendant never objected below that the State's method of inquiring into the prior domestic violence was improper in that the State was inquiring into the prior court proceeding and conviction, rather than into the prior acts themselves. Therefore, we confine ourselves to the issue apparently raised below, and we do not address the State's method. *See* Rule 12–216 NMRA 1999.

{22} In addition, this was a bench trial, and in such trials the judge often hears evidence or argument that he or she must subsequently disregard when functioning as fact-finder. *See State v. Campos*, 1996–NMSC–043, ¶ 27, 122 N.M. 148, 921 P.2d 1266. In this case, because the evidence of prior drinking and domestic violence was admissible for some purposes, e.g., to attack credibility, but not for other purposes, e.g., to show that Defendant was guilty this time because he had committed crimes while intoxicated and domestic violence on prior occasions, the issue is whether the judge properly or improperly considered the prior convictions. We presume that a judge is able to properly weigh the evidence, and thus the erroneous admission of evidence in a bench trial is harmless unless it appears that the judge must have relied upon the improper evidence in rendering a decision. *See State v. Roybal*, 107 N.M. 309, 310, 756 P.2d 1204, 1205 (Ct.App. 1988); *In re Doe*, 89 N.M. 700, 703, 556 P.2d 1176, 1179 (Ct.App.1976).

{23} The trial court here was aware of Defendant's DWI arrest prior to the discussion about it at trial because it was mentioned at a hearing to review Defendant's release conditions. There is no indication that the discussion at trial caused prejudice beyond that suffered as a result of Defendant's initial lie that he had not been drinking, followed by his testimony that he did not remember very well, followed by an admission that he had in fact been drinking before he arrived at Castillo's house. Nor did it appear that the trial judge in any way relied on past convictions as improper character evidence in deliberating Defendant's guilt. At the conclusion of the trial, the court stated that it believed very little of Defendant's testimony. In particular, the court said it believed that Defendant was out drinking most of the night and showed up at Castillo's probably with the intent of having relations with her. As indicated by the transcript, the court's belief appears not to be related to any evidence of prior convictions. Rather, it appears to be related to Castillo's testimony, to the lie Defendant was caught in on cross-examination about never drinking, which he was later forced to correct, and to the unlikelihood of his defense—that Castillo hurt herself. In fact, when the domestic violence conviction was discussed, the judge acknowledged that there was a conviction, but expressly understood that Defendant did not agree with it. Thus, we cannot hold that the trial court's treatment of Defendant's prior convictions was error. *See Roybal*, 107 N.M. at 310, 756 P.2d at 1205 (holding that error in a bench trial is harmless unless judge relied on improper evidence). We see no intimation that the trial judge relied on Defendant's prior convictions in an improper manner in coming to his decision. Given the absence of such an indication, we affirm on this issue.

C. *The Trial Court Erred, Under State v. Meadors, by Convicting Defendant of Breaking and Entering.*

{24} Whether the trial court erred by convicting Defendant at a bench trial of an uncharged lesser offense is a question of law that we review de novo. *See State v. Attaway*, 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994). Defendant argues that the trial court erred by convicting him, without notice, of breaking and entering, and by considering it a lesser-included offense of aggravated burglary. Our analysis of this issue is guided by *State v. Meadors*, 121 N.M. 38, 908 P.2d 731 (1995).

{25} The trial court convicted Defendant of breaking and entering, finding that it was an appropriate lesser-included offense of aggravated burglary. The trial court can properly consider a lesser-included offense if the evidence at trial would support a conviction for that offense. *See State v. Wilson*, 117 N.M. 11, 14, 868 P.2d 656, 659 (Ct.App.1993); *State v. Archuleta*, 108 N.M. 397, 399, 772 P.2d 1320, 1322 (Ct.App.1989) (permitting a trial court to sua sponte consider a lesser-included charge). Breaking and

entering, however, is not a lesser-included offense of aggravated burglary under our former, strict elements test because each offense requires an element not included in the other. *See State v. Henderson,* 116 N.M. 537, 541, 865 P.2d 1181, 1185 (1993), *overruled in part by Meadors,* 121 N.M. at 46–47, 908 P.2d at 739–40. Burglary can be accomplished by any unauthorized entry with the intent to commit a felony within, but breaking and entering requires that the unauthorized entry be by fraud, deception, breaking, or dismantling. *Compare* NMSA 1978, § 30–16–4 (1963) *with* § 30–14–8. Contrary to the common-law definition of burglary, New Mexico does not consider "breaking" to be an element of burglary. *See State v. Ross,* 100 N.M. 48, 51, 665 P.2d 310, 313 (Ct.App.1983).

{26} In *Meadors,* 121 N.M. at 42–44, 908 P.2d at 735–37, our Supreme Court adopted a "cognate approach" for determining whether an offense is a lesser-included offense. That test applies when the State requests a lesser-included offense instruction, and we see no reason to apply a different standard when the trial court considers a charge sua sponte. *See id.* at 46–47, 908 P.2d at 739–40. The test aims to avoid the inflexibility of the strict elements test while providing notice to the defendant of the crime against which he must defend. *See id.* at 44, 908 P.2d at 737. This case presents a notice problem.

{27} In *Meadors,* the defendant appealed the trial court's grant of the State's requested jury instruction on aggravated battery as a lesser-included offense of attempted murder. *See id.* at 41, 908 P.2d at 734. He alleged that this erroneous instruction deprived him of his constitutional right to notice of the crime with which he was charged because aggravated battery required proof of the elements of unlawful touching and great bodily harm or risk of great bodily harm, neither of which were elements of attempted murder. *See id.*

{28} The Supreme Court held in *Meadors* that the defendant had notice of the elements he needed to defend against based on the sum of the charges, which included aggravated arson and malicious use of an explosive. *See id.* at 46, 908 P.2d at 739.

The elements of aggravated battery which were not necessary to prove attempted murder were elements of crimes charged in the other two counts of the indictment. *See id.* at 45–46, 908 P.2d at 738–39. In addition, under the facts of *Meadors,* the defendant could not have committed attempted murder by dousing his victim with gasoline and igniting him without also having committed aggravated battery. *See id.* at 46, 908 P.2d at 739.

{29} In the instant case, Defendant had no notice of the "breaking" element of breaking and entering. *See id.* The breaking-and-entering offense utilized by the trial court fails the *Meadors* test because breaking and entering requires unauthorized entry by fraud, deceit, *breaking, or dismantling,* whereas aggravated burglary may be accomplished by any unauthorized entry. *See Ross,* 100 N.M. at 51, 665 P.2d at 313; *cf. State v. Roman,* 1998–NMCA–132, ¶¶ 13–14, 125 N.M. 688, 964 P.2d 852 (reversing conviction for lack of notice because the state belatedly amended the information to include an entirely new offense). Further, there was nothing anywhere in the indictment that referred to any fraud, deceit, breaking, or dismantling.

{30} Defendant maintains that if he had known he was in jeopardy for breaking and entering, he would have put on specific evidence regarding, for example, preexisting damage to Castillo's door which would have contradicted the State's position that he broke or dismantled the door or lock. The State presented some evidence about the damage, but did not elicit testimony from Castillo about the prior condition of the door or whether Defendant still had a key. There was no testimony regarding fraud or deception. If Defendant had known that he was in jeopardy for breaking and entering, he would have been able to defend based specifically on the "breaking or dismantling" element. By convicting Defendant of breaking and entering when Defendant only had notice of an aggravated burglary, the trial court violated Defendant's right to notice of the charges against him. *See Meadors,* 121 N.M. at 46, 908 P.2d at 739; *Roman,* 1998–NMCA–132, ¶¶ 13–14, 125 N.M. 688, 964 P.2d 852.

## III. CONCLUSION

{31} We affirm Defendant's convictions for false imprisonment and for aggravated battery and reverse the conviction for breaking and entering.

{32} **IT IS SO ORDERED.**

HARTZ and SUTIN, JJ., concur.