This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41358**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**ALIX GILMORE,**

  Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Linda S. Rogers, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Christa Street, Assistant Solicitor General
Albuquerque, NM

for Appellee

Aragon Moss George Jenkins, LLP
Robert H. Moss
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}**   The metropolitan court convicted Defendant for driving under the influence of intoxicating liquor (DWI), impaired to the slightest degree, contrary to NMSA 1978, Section 66-8-102(A) (2016), after the State presented evidence that a vehicle registered to Defendant drove into three parked cars, that she admitted to police that she had consumed alcohol and was on her way home, and that she performed poorly on field sobriety tests. Defendant appeals the conviction and argues (1) the metropolitan court

should have suppressed the statements she made to the officer in the ambulance; (2) the State relied on Defendant's confession and offered no corroborating evidence; (3) insufficient evidence supported the conviction; (4) the metropolitan court improperly relied on facts not in evidence; and (5) these cumulative errors violated her right to due process. We affirm.

**DISCUSSION**

**{2}** Because this is a memorandum opinion, we reserve factual discussion for our analysis of the five issues raised on appeal, which we address in turn.

**I.** **Defendant's Statements to the Investigating Officer**

**{3}** Defendant argues that the metropolitan court should have suppressed statements she made to the officer while she was receiving treatment in an ambulance. Generally, a person's statements to law enforcement may not be used against them as "substantive evidence at trial" unless the person first receives warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *See State v. Snell*, 2007-NMCA-113, ¶ 9, 142 N.M. 452, 166 P.3d 1106. But *Miranda* warnings are required only "when a person is (1) interrogated while (2) in custody." *State v. Wilson*, 2007-NMCA-111, ¶ 12, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted).

**{4}** Defendant maintains that the metropolitan court should have granted the motion to suppress because the officer exploited her confinement in the ambulance in order to conduct a custodial interrogation. This issue raises a mixed question of law and fact. *See id.* In this context, we review factual determinations for substantial evidence, "in the light most favorable to the prevailing party," while the "application of law to the facts is subject to de novo review." *Id.* (omission, internal quotation marks, and citation omitted).

**{5}** To determine whether law enforcement questioning is a custodial interrogation for the purposes of *Miranda*, we apply an objective test. *See id.* ¶ 14 ("[T]he test is objective, the actual subjective beliefs of the defendant and the officer . . . are irrelevant." (internal quotation marks and citation omitted)). The first consideration is "whether a reasonable person would believe that [they were] free to leave." *Id.* ¶ 22. If so, "then there cannot be a custodial interrogation under *Miranda*." *Id.* If, however, "a court answers negatively, the inquiry does not end, because not every seizure constitutes custody for purposes of *Miranda*" and the next question is therefore "whether a reasonable person would have understood [their] freedom of action to have been curtailed to a degree associated with a formal arrest." *Id.* (alteration, internal quotation marks, and citation omitted). To begin the analysis, we consider the evidence presented at the suppression hearing. *See State v. Hermosillo*, 2014-NMCA-102, ¶ 11, 336 P.3d 446 ("If no formal arrest occurred prior to questioning, our appellate courts engage in a fact-specific analysis of the totality of the circumstances under which the questioning took place in order to decide whether the custody requirement is met.").

**{6}**     Before the investigating officer arrived, civilian bystanders[1] prevented Defendant from fleeing the scene of the accident. When emergency medical technicians (EMTs) responded, they took Defendant into an ambulance and provided medical assistance. The bystanders or EMTs may or may not have restrained Defendant during this intervention. When the investigating officer arrived, Defendant was already in the ambulance with the EMTs. The investigating officer entered the ambulance, and Defendant was relaxed, unrestrained, and sitting up on a bench accompanied by three EMTs. Defendant was not physically restrained at any time during the investigating officer's questioning. The officer introduced himself and started asking general questions:

The officer:     What's going on tonight?

Defendant:     My mother is in a hospital, and I'm not doing okay.

The officer:     What does that mean, what happened with your car?

Defendant:     So, I have been taking care of her since she got to her situation. Good tonight—I did not do a good job.

The officer:     Okay, where are you coming from tonight?

Defendant:     From work.

The officer:     Where do you work?

Defendant:     . . . I work at a . . . I don't want to tell you because I already know where you're going with this.

The officer:     How much have you had to drink tonight?

Defendant:     Not a lot—but—

The officer:     What's not a lot?

Defendant:     I've only had two shots and a drink—but because I have had . . . a lot—from—then—I know you're going to say that I'm drunk and that this is what happened with everything—so—

The officer administered two alternate field sobriety tests, and Defendant performed poorly on both. The officer asked Defendant "how drunk" she was on a scale of one to ten, with one being "just a little drunk" and ten being the "drunkest you've ever been,"

_____

[1]Because the metropolitan court suppressed the bystanders' testimony, we consider the officer's testimony about the bystanders' reports for the purposes of the suppression hearing only. *See State v. Rivera*, 2008-NMSC-056, ¶ 15, 144 N.M. 836, 192 P.3d 1213 ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." (internal quotation marks and citation omitted)).

and Defendant responded, "Five." At that time, the officer notified Defendant that although the EMTs could continue to evaluate her, she was under arrest for DWI.

**{7}** Based on this evidence, we disagree with Defendant that she was in custody for *Miranda* purposes. Defendant argues that she was "held by private individuals, confined in an ambulance, [and] informed she could not leave" and that when the officer "proceeded to question [her] after learning that she had been forcibly detained and confined for police, he adopted the benefit of that custodial restraint." To the extent that the bystanders' and EMTs' actions ultimately assisted law enforcement, those actions were independent of any DWI investigation and did not themselves create a situation in which a reasonable person would believe they were subject to a formal arrest. *Cf. State v. Rivera*, 2010-NMSC-046, ¶ 2, 148 N.M. 659, 241 P.3d 1099 (encouraging "private citizens to assist police officers in the investigation of crimes" but also requiring law enforcement to obtain a warrant before expanding a private citizen's search). When the investigating officer arrived, Defendant was not physically restrained in the ambulance, whether by handcuffs or medical restraints or human hands. *See Wilson*, 2007-NMCA-111, ¶ 27 (explaining that lack of restraints is a factor in finding a defendant was not in custody). Defendant sat calmly when the investigating officer arrived and remained sitting calmly as the investigating officer asked about the circumstances of the traffic crash. The questioning that followed was routine, brief, and witnessed by other people who were in the ambulance. *See Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 10, 105 N.M. 771, 737 P.2d 552 ("Generally, custodial interrogation does not occur at a traffic stop based upon: (1) the routineness of the questions; (2) the generally brief detention; and (3) the fact that such stops are in the public view." (internal quotation marks and citation omitted)).

**{8}** We also disagree with Defendant's contention that the content of the officer's questions about her alcohol consumption transformed the encounter into a custodial interrogation. *See State v. Cavanaugh*, 1993-NMCA-152, ¶ 5, 116 N.M. 826, 867 P.2d 1208 (defining "[i]nterrogation" as when "an officer subjects an individual to questioning or circumstances which the officer knows or should know are reasonably likely to elicit incriminating responses"). We note that whether the officer had reasonable suspicion to investigate the crash by asking about Defendant's impairment at the time of driving is not in dispute in this appeal. *See Wilson*, 2007-NMCA-111, ¶¶ 18-19 (explaining that during an investigatory detention, an officer is permitted to briefly detain a person based on reasonable suspicion of criminal activity and to ask questions related to identity and to the suspicious circumstances). In this regard, "[g]eneral on-the-scene questioning or other general questioning of citizens in the fact-finding process is not considered custodial, and a person in these circumstances need not be informed of [their] rights before being questioned." *State v. Greyeyes*, 1987-NMCA-022, ¶ 9, 105 N.M. 549, 734 P.2d 789. Although Defendant contends the officer's questions were "aimed not at neutral fact-finding," the officer's inquiry into how much alcohol Defendant had consumed and how drunk she felt were reasonably related to the circumstances of the crash that the officer had already observed. *See State v. Sanchez*, 2001-NMCA-109, ¶ 22, 131 N.M. 355, 36 P.3d 446 ("Historically, police have been allowed to ask preliminary questions regarding a driver's license and registration, and even to make

reasonable requests to perform field sobriety tests, without rising to the level of custodial interrogation, which would require *Miranda* warnings." (omission, internal quotation marks, and citation omitted)). As this Court has explained, the "mere fact that police may have focused their investigation on a defendant at the time of the interview does not raise questioning to a level required to warrant *Miranda* warnings." *Greyeyes*, 1987-NMCA-022, ¶ 9.

**{9}**   The present case is similar to *Greyeyes*, in which a police officer was dispatched to a single vehicle accident that was allegedly caused by a "drunk driver." *Id.* ¶ 2. The officer arrived on scene and observed two men near a truck that had hit a rail post. *Id.* ¶ 3. The officer asked who owned the truck, who had been driving, how the accident occurred, and whether the defendant had been drinking. *Id.* The defendant answered that he had been driving the truck, explained the accident, and admitted that he had been drinking "all night." *Id.* This Court rejected the defendant's argument that the questioning amounted to a custodial interrogation, because the officers questioning was not "anything more than purely investigatory." *Id.* ¶ 10. In the present case, to investigate the crashed vehicles the officer had observed and the reports he had received, he similarly inquired into Defendant's connection with the vehicle involved in the crash and her sobriety. *See Armijo*, 1987-NMCA-052, ¶ 11 ("Inculpatory statements made to police during the traffic stop, prior to formal arrest, are not the product of custodial interrogation." (internal quotation marks omitted)); *Cavanaugh*, 1993-NMCA-152, ¶ 5 (concluding that fact-finding questions about a suspected DWI accident do not amount to an interrogation). As a result, as in *Greyeyes*, the officer's questions were purely investigatory and did not elevate the circumstances to a custodial interrogation.

**{10}**   For these reasons, when the officer encountered Defendant in the ambulance, neither the circumstances nor the officer's questions would cause a reasonable person to believe that their "freedom of action" had been "curtailed to a degree associated with a formal arrest." *See Wilson*, 2007-NMCA-111, ¶ 22 (alteration, internal quotation marks, and citation omitted); *Armijo*, 1987-NMCA-052, ¶¶ 10-11 (observing that detentions during routine traffic stops are not generally custodial); *Sanchez*, 2001-NMCA-109, ¶ 22 (explaining that detention for DWI traffic stops is generally not custodial); *cf. Wilson*, 2007-NMCA-111, ¶ 35 (holding that a DWI traffic stop escalated to a custodial interrogation when law enforcement physically restrained, handcuffed, and placed the defendant in the back of the police car). We therefore conclude that Defendant was not subject to a custodial interrogation, and as a result, the metropolitan court did not err in declining to suppress Defendant's statements on the basis that *Miranda* warnings had not been given.

## II.   Evidence that Corroborated Plaintiff's Extrajudicial Admissions

**{11}**   Defendant also argues that the State did not establish corpus delicti—provide proof that a crime actually occurred—and instead relied on her extrajudicial statements without independent evidence to support the conviction. *See State v. Sosa*, 2000-NMSC-036, ¶ 15, 129 N.M. 767, 14 P.3d 32 ("The corpus delicti of a particular offense is established simply by proof that the crime was committed." (internal quotation marks

and citation omitted)). In New Mexico, "an extrajudicial statement may be used to establish the corpus delicti where the statement is shown to be trustworthy and where there is some independent evidence to confirm the existence of the alleged loss or injury." *State v. Saiz*, 2017-NMCA-072, ¶ 14, 404 P.3d 422 (emphasis, internal quotation marks, and citation omitted); *see id.* (referring to this requirement as the modified trustworthiness rule). The State may establish "[t]his independent evidence" with "either direct or circumstantial evidence, but such evidence must be independent of a defendant's own extrajudicial statements." *State v. Martinez*, 2021-NMSC-012, ¶¶ 31-32, 483 P.3d 590 (internal quotation marks and citation omitted). The State maintains that it presented "circumstantial evidence" that was both "independent" of Defendant's extrajudicial statements and "sufficient" to show each element of DWI. Where, as here, the "pertinent facts are undisputed . . . we apply a de novo standard of review to determine as a matter of law whether the uncontested facts were sufficient to establish the corpus delicti of . . . DWI pursuant to the modified trustworthiness doctrine adopted and applied in New Mexico." *See State v. Owelicio*, 2011-NMCA-091, ¶ 16, 150 N.M. 528, 263 P.3d 305.

{12}    Defendant argues that the State did not establish, apart from her extrajudicial statements, either element of the crime of DWI, impaired to the slightest degree. *See Sosa*, 2000-NMSC-036, ¶ 15 (describing "corpus delicti" as "proof that the crime was committed" (internal quotation marks and citation omitted)). Specifically, Defendant points to the following extrajudicial statements: (1) she was "coming from work"; (2) she consumed "two shots and a drink" that night; and (3) her level of intoxication on a scale of one to ten was "five." To establish the corpus delicti of DWI, the State must establish that someone—in the present case, Defendant—both (1) operated a vehicle and (2) was impaired to the slightest degree. *See Owelicio*, 2011-NMCA-091, ¶ 25 (noting that "the corpus delicti of the crime of DWI was established by independent evidence showing that someone drove while intoxicated"); UJI 14-4501 NMRA (defining "under the influence of intoxicating liquor" as being "less able to the slightest degree . . . to handle a vehicle with safety"). As we explain, we conclude that the modified trustworthiness rule was satisfied because the State established (1) "some independent evidence to confirm" the two elements of DWI occurred, and (2) that "the statement[s] were] shown to be trustworthy" *See Saiz*, 2017-NMCA-072, ¶ 14 (internal quotation marks and citation omitted)).

{13}    The State established independent evidence to support both elements of DWI. The evidence presented at trial established that (1) the officer was dispatched to the scene of a car accident; (2) when he arrived, the officer observed a row of cars parked on side of the street, three of which had been struck by another vehicle; (3) the vehicle that had crashed into the other three cars was registered to Defendant; (4) only Defendant's vehicle's airbags had deployed and all four vehicles suffered "severe" physical damage; (5) the officer saw no evidence of any other person on scene associated with Defendant's vehicle; (6) Defendant was injured from the collision and no one else present was; (7) Defendant displayed the outward signs of alcohol consumption, including odor, speech, and affected eyes; and (8) she performed poorly on field sobriety tests. Thus, the State  provided some evidence, independent from

Defendant's statements, that the criminal act of DWI occurred. *State v. Yanni*, 2023-NMCA-084, ¶ 7, 538 P.3d 121.

**{14}** Essentially the same evidence corroborated the trustworthiness of the content of Defendant's statements about driving and drinking alcohol. *See Owelicio*, 2011-NMCA-091, ¶ 27 ("In determining the trustworthiness of [the d]efendant's extrajudicial statement, we look not at the circumstances surrounding the statement, but instead at the actual content of the statement and evidence that corroborates the information contained in the statement."). While no evidence corroborates Defendant's specific statement that she was coming from work, the implication of that statement—that she was driving—was corroborated by the officer's testimony that Defendant's vehicle crashed into three parked cars and that no one else at the scene was associated with the vehicle that was registered to Defendant. Similarly, the state of the crashed vehicles, the visible signs of intoxication that the officer observed, and Defendant's performance on the field sobriety tests further corroborated her statements about drinking alcohol. *See id.* (considering evidence that corroborated the defendant's admission to drinking, including "that the vehicle was disabled in a way that indicated impaired driving); *cf. Yanni*, 2023-NMCA-084, ¶ 14 (determining that the fact-finder "could not infer the trustworthiness of [the d]efendant's admission" because "there [wa]s no evidence that the two parked vehicles were damaged, that a collision occurred in the parking lot, or that [the d]efendant ever was in the vicinity of—much less operated—the vehicle she purportedly crashed"). Thus, Defendant's statements were corroborated.

**{15}** For these reasons, the evidence establishes, independent from Defendant's extrajudicial statements, that the crime of DWI occurred and that those extrajudicial statements were corroborated. *See Saiz*, 2017-NMCA-072, ¶ 14. The State therefore sufficiently established the corpus delicti of DWI.

### III. Sufficiency of the Evidence to Support the Conviction

**{16}** For similar reasons, we reject Defendant's argument that the evidence was legally insufficient to support the conviction. *See Owelicio*, 2011-NMCA-091, ¶ 32 ("In analyzing a sufficiency challenge on appeal, we view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict."). Defendant argues that the evidence of impairment is insufficient because no breath alcohol test results were submitted but disregards that she was convicted under the impaired to the slightest degree standard and not for DWI per se. *Compare* § 66-8-102(A) (prohibiting the operation of a vehicle "for a person who is under the influence of intoxicating liquor"), *with* § 66-8-102(C) (prohibiting the operation of a vehicle "if the person has an alcohol concentration of eight one hundredths or more in the person's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle"). The State was therefore not required to prove a specific blood or breath alcohol concentration within three hours of operating the vehicle. *See State v. Neal*, 2008-NMCA-008, ¶ 27, 143 N.M. 341, 176 P.3d 330 ("The lack of blood or breath test results does not invalidate a conviction under Section 66-8-102(A).").

**{17}** Otherwise, the circumstantial evidence together with Defendant's admissions, which we have already described, support an inference that Defendant operated the vehicle that hit the parked cars and that she was impaired to the slightest degree by alcohol. *See State v. Alvarez*, 2018-NMCA-006, ¶¶ 13-14, 409 P.3d 950 (affirming a conviction for DWI based on circumstantial evidence that supported an inference that the defendant was driving); *State v. Caudillo*, 2003-NMCA-042, ¶ 8, 133 N.M. 468, 64 P.3d 495 (holding that there was sufficient evidence for a DWI verdict where the defendant admitted to drinking a few beers combined with the defendant's "appearance, slurred speech, and a strong odor of alcohol"). Examining the "evidence in the light most favorable to the verdict" and "resolving all conflicts and indulging all inferences in favor of the verdict," the State established sufficient evidence that Defendant was impaired to the slightest degree while driving. *See Owelicio*, 2011-NMCA-091, ¶ 32 (reciting the standard of review); *see also id.* ¶¶ 32-34 (describing evidence that was sufficient to establish DWI, impaired to the slightest degree).

## IV. The Nature of the Evidence Supporting the Verdict

**{18}** Defendant argues that the metropolitan court improperly relied on facts outside of the evidence in order to convict her. Specifically, Defendant asserts that as the finder of fact, the metropolitan court considered the bystander testimony that Defendant had fled from the scene, even though that testimony had been suppressed before trial. Defendant maintains that the flight evidence (1) "materially bolstered" the State's other evidence that Defendant operated the vehicle, (2) permitted an inference of consciousness of guilt, and (3) "undermined the fairness of [the] trial." "A trial judge must exercise great care to assure a criminal defendant a fair and impartial trial." *State v. Martin*, 1984-NMSC-077, ¶ 27, 101 N.M. 595, 686 P.2d 937. Nevertheless, "when admissibility of evidence is challenged at a bench trial, we generally presume that a judge is able to properly weigh the evidence, and thus the erroneous admission of evidence in a bench trial is harmless unless it appears that the judge must have relied upon the improper evidence in rendering a decision." *State v. Pickett*, 2009-NMCA-077, ¶ 13, 146 N.M. 655, 213 P.3d 805 (internal quotation marks and citation omitted). The record in the present case demonstrates that the metropolitan court did not rely on improper evidence.

**{19}** The metropolitan court explained the evidence on which the verdict rested. The evidence of flight derived not from the bystanders but from a statement that Defendant made to the officer. When asked whether she hit her head during the crash or while running away afterward, Defendant responded, "Both." That statement was properly admitted at trial through both the officer's testimony and the bodycam exhibit. Because the metropolitan court did not rely on facts outside of the evidence, we discern no error. *See State v. Hernandez*, 1999-NMCA-105, ¶ 22, 127 N.M. 769, 987 P.2d 1156 (explaining that in a bench trial, "the judge often hears evidence or argument that [they] must subsequently disregard when functioning as fact-finder").

## V. Cumulative Error

**{20}** Defendant argues that the errors she asserted on appeal cumulatively "constitute a deprivation of due process." Because the record reflected no error, cumulative error does not apply. *See State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("Where there is no error to accumulate, there can be no cumulative error." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{21}** We affirm.

**{22}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**