2005-NMCA-063

113 P.3d 384

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Nic AKER, Defendant–Appellant.**

**No. 24099.**

Court of Appeals of New Mexico.

April 12, 2005.

Certiorari Denied, No. 29,192,
May 19, 2005.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

## OPINION

ALARID, J.

{1} Defendant Nic Aker appeals from the trial court's judgment and sentence. He pled guilty to second degree murder, kidnaping, burglary, conspiracy to commit kidnaping, and conspiracy to commit first degree murder. Defendant raises two issues on appeal, arguing that the trial court erred in considering previously undisclosed ex parte letters concerning sentencing, and that Defendant was deprived of effective assistance of counsel because counsel did not have an opportunity to review the letters before sentencing. Not persuaded by Defendant's arguments, we affirm on both issues.

**FACTUAL AND PROCEDURAL BACKGROUND**

{2} Defendant was charged in a forty-four count indictment for various crimes associated with the kidnaping and murder of MaryAlice Stephens (the Victim). The charges arose out of the following incidents: Defendant was the roommate of Richard Clappsy, the Victim's former boyfriend, and the Victim had expressed her fears of Clappsy. Pursuant to a plan between Clappsy and Defendant, Defendant called the Victim to tell her that Clappsy had lung cancer, was remorseful about a prior negative encounter, and wanted to see the Victim. The Victim cancelled her previous plans and went to the apartment shared by Clappsy and Defendant. The Victim and Clappsy had consensual sex and Clappsy convinced the Victim to let him tie her up under the guise of showing Defendant some security moves. Once the Victim was tied up, Clappsy obtained the PIN number from the Victim's bank accounts and Defendant withdrew the Victim's money from various ATM machines. After returning to the apartment, Defendant watched Clappsy strangle the Victim to death. Clappsy and Defendant then disposed of the Victim's body in a dumpster. The Victim's body was never located. Defendant and Clappsy burglarized the Victim's house and pawned or sold a few of the items that they found. Defendant was apprehended and eventually pled guilty to second degree murder, kidnaping, burglary, conspiracy to commit kidnaping, and conspiracy to commit first degree murder. In his plea, Defendant acknowledged that he could be sentenced to a maximum term of sixty years.

{3} Sentencing was scheduled for April 4, 2003. At the instigation of the Victim's sister, almost two hundred people wrote letters to the trial court urging that the maximum sentence be imposed. We provide the details of certain letters in our discussion below. However, in general, the letters address the Victim's attributes and the impact of her murder on her family, friends, and the community at large. The letters urged the court to sentence Defendant to the maximum term of imprisonment allowed under the plea agreement. These letters were apparently compiled by the Victim's Unit of the district attorney's office which delivered 120 letters to the court shortly before sentencing. On April 2, 2003, the defense counsel was advised of the letters. Defense counsel retrieved the letters that day. The next day, defense counsel was advised that another batch of 72 letters had arrived. Due to time constraints, defense counsel was not able to review the second set of letters until after sentencing. In total, 192 letters were submitted to the trial court.

{4} The night before sentencing, the trial judge reviewed all of the letters. Also reviewed was Defendant's sentencing memorandum, the attachments thereto, and a sixty-day diagnostic evaluation report.

{5} At the sentencing hearing, Defendant objected to the letters. Defendant argued that it was improper to sentence him based upon information to which the defense was not privy. He also argued that the ex parte communications violated his constitutional rights to due process and effective assistance of counsel. Defendant argued that the trial judge should recuse himself because he had been tainted by the volume and content of the letters. The judge disagreed and sentenced Defendant to the maximum term of sixty years.

{6} After sentencing, Defendant filed a motion to vacate sentence and renewed motion to recuse, again arguing that the trial judge should recuse himself "based on the intensive and inappropriate lobbying efforts." Defendant argued that the court wrongfully considered the ex parte letters in sentencing Defendant. Defendant also argued that due process guarantees preclude him from being sentenced based upon information to which he is not a party. Defendant claimed that the court impermissibly permitted the input of persons who are not "victims" within the meaning of Sections 31-26-3(D) and (F) of the Victims of Crime Act, NMSA 1978, §§ 31-26-1 to -14 (1994, as amended through 2003). The court held a hearing on Defendant's motion and, after clarifying certain factual misstatements, denied the motion. This appeal followed.

## DISCUSSION

{7} As an initial matter, we agree with Defendant that, by pleading guilty, he did not waive his right to appeal any alleged defects in the sentencing proceeding, and we note that the State also agrees with Defendant's contention. *See State v. Todisco,* 2000–NMCA–064, ¶ 13, 129 N.M. 310, 6 P.3d 1032. We therefore proceed to address the merits of Defendant's appeal.

### Standard of Review

{8} "We review the trial court's sentencing for an abuse of discretion." *State v. Gardner,* 2003–NMCA–107, ¶ 39, 134 N.M. 294, 76 P.3d 47 (quoting *State v. Jensen,* 1998–NMCA–034, ¶ 19, 124 N.M. 726, 955 P.2d 195).

### Analysis

{9} Defendant was sentenced in accordance with his plea agreement, and the trial court had the discretion to order Defendant's sentences to be served consecutively. *See Jensen,* 1998–NMCA–034, ¶¶ 21–22, 124 N.M. 726, 955 P.2d 195 (noting the trial court's authority to impose consecutive sentences in the exercise of its discretion). Furthermore, the trial court's imposition of the sixty-year sentence does not constitute an aggravation of the basic sentence authorized in NMSA 1978, § 31–18–15(A) (2003). *See State v. Sosa,* 1996–NMSC–057, 122 N.M. 446, 448, 926 P.2d 299, 301 (holding that the sentencing court's failure to suspend the defendant's sentence is not an enhancement or aggravation of the sentence, but merely a refusal to grant leniency and, "[i]t is settled law in this jurisdiction that a suspended sentence is a matter of judicial clemency to which a defendant may never claim entitlement"). Therefore, we begin our review with the presumption that the trial court did not abuse its discretion in sentencing Defendant pursuant to Section 31–18–15(A) and in accordance with the plea agreement. *See State v. Cumpton,* 2000–NMCA–033, ¶ 12, 129 N.M. 47, 1 P.3d 429 (observing that "[d]efendant is entitled to no more than a sentence prescribed by law"); *State v. Duran,* 1998–NMCA–153, ¶ 41, 126 N.M. 60, 966 P.2d 768 ("In imposing a sentence or sentences upon a

defendant, the trial judge is invested with discretion as to the length of the sentence, whether the sentence should be suspended or deferred, or made to run concurrently or consecutively within the guidelines imposed by the Legislature.")

■ {10} Even though Defendant received the basic sentence, due process concerns may arise if the sentence is based upon improperly admitted evidence. *See Gardner,* 2003–NMCA–107, ¶ 43, 134 N.M. 294, 76 P.3d 47. In *Gardner,* the defendant challenged his sentence because, at the sentencing hearing, the State introduced the statements of seven witnesses who made allegations of previous improper sexual behavior by the defendant for which the defendant was never charged. This Court affirmed the defendant's sentence because nothing in the record suggested that he was prejudiced by, and the trial court gave no indication that it had considered, the witnesses' statements when imposing the sentence. *Id.* (observing that "[t]he trial court's statement at sentencing reflects that the sentence resulted from the evidence presented at trial"). We recognized that, to the extent the trial court relies on any certain information in determining a defendant's sentence, "due process may require advance notice to the defendant so that the defendant has the opportunity to challenge the accuracy of th[at] information." *Id.*

{11} In this case, Defendant claims that he was denied due process because, in imposing the maximum sixty-year sentence, the trial court improperly considered the 192 letters submitted by the public. He further claims that his due process rights were denied because the State and the court failed to give him adequate notice of the letters, thus depriving him of the opportunity to challenge the accuracy of the information contained in the letters.

### The Letters Were Admissible in the Sentencing Proceeding

■ {12} Defendant claims that the letters were inadmissible because they were not from "victims" or "victims representatives" as defined in the Victims of Crime Act. *See* § 31–26–3(D) and (F) We disagree. Defen-

dant is correct that the Victims of Crime Act only accords rights to persons who are victims of the crime currently before the court and the family members of such victims. However, we are unaware of any statutory or common law authority precluding a court from considering letters or statements from non-victims when sentencing a defendant in a non-capital case. *See Gardner,* 2003–NMCA–107, ¶ 43, 134 N.M. 294, 76 P.3d 47 (recognizing that a trial court has "broad statutory authority to consider at sentencing 'whatever evidence or statements it deems will aid it in reaching a decision'") (quoting § 31–18–15.1(A)); *State v. Wilson,* 2001–NMCA–032, ¶ 25, 130 N.M. 319, 24 P.3d 351 ("[O]ur case law allows the court discretion to consider almost any relevant factor or evidence in determining the appropriate sentence.").

{13} We are unpersuaded by Defendant's citations to *Payne v. Tennessee,* 501 U.S. 808, 817–18, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), and *State v. Allen,* 2000–NMSC–002, ¶ 17, 128 N.M. 482, 994 P.2d 728, to support his contention that the letters were inadmissible because those cases address victim impact evidence in a capital felony sentencing proceeding before a jury. The admissibility of any evidence during a capital trial is subjected to stricter scrutiny in recognition of "'the qualitative difference of death from all other punishments.'" *Allen,* 2000–NMSC–002, ¶ 61, 128 N.M. 482, 994 P.2d 728 (quoting *California v. Ramos,* 463 U.S. 992, 998, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)); *Clark v. Tansy,* 118 N.M. 486, 490, 882 P.2d 527, 531 (1994) ("[T]his Court believes that death indeed is different from other sanctions and thus requires greater scrutiny."). Defendant has failed to apprise us of any statute or case law imposing similar limits to the materials that a trial court may consider in imposing a sentence in a non-capital case. *Cf.* NMSA 1978, § 31–20A–5 (1981) (limiting the aggravating circumstances that may be considered when imposing a sentence in a capital case).

{14} Based upon the foregoing, we hold that the trial court did not err in reviewing the 192 letters from the public before sentencing Defendant even though the letters

were not from victims of the crime or their families.

*The State Erred in Failing to Notify Defendant Before Submitting the Letters to the Trial Court*

■ {15} The Victim's Unit of the district attorney's office submitted 192 letters to the court prior to the sentencing hearing. Contrary to the State's contention, we hold that the submission of the letters by the Victim's Unit of the district attorney's office constitutes ex parte communication by the State because the letters were submitted to the court by a branch of the district attorney's office without notifying Defendant. *See* A.B.A. Standards for Crim. Justice 3–2.8(c) (3d ed.1993) (stating that "a prosecutor [should not] engage in unauthorized ex parte ... submission of material to a judge relating to a particular case which is ... before the judge"). We agree with Defendant that the prosecutor had an obligation to share the letters with Defendant, or, at the least, to notify Defendant before the letters were submitted to the court and that the prosecutor failed to notify Defendant. *See* Rules 5–501 and 5–505 NMRA.

■ {16} Defense counsel claims that it was only able to review 120 of the letters before the sentencing hearing. Even though the State erred in submitting the letters to the court without notifying Defendant, and this error may have deprived defense counsel of an opportunity to fully review the letters, we hold that the State's error does not warrant reversal because, for the reasons that follow, there is no evidence that Defendant was prejudiced by the admission of the letters. *See State v. Rojo,* 1999–NMSC–001, ¶ 61, 126 N.M. 438, 971 P.2d 829 (refusing to hold that the State's delay in disclosing evidence to the defendant required reversal in the absence of any showing that the nondisclosure prejudiced the defendant); *State v. Roybal,* 120 N.M. 507, 511, 903 P.2d 249, 253 (Ct.App.1995) (holding that the State's failure to disclose plea agreement documents pursuant to Rule 5–501 before offering them into evidence at the habitual offender hearing did not warrant reversal because the defendant was not prejudiced by the State's fail-

ure); *State v. Mares*, 112 N.M. 193, 197, 812 P.2d 1341, 1345 (Ct.App.1991) (holding that the ex parte conduct did not require reversal because there was an absence of prejudice to the defendant and, the defendant was accorded an opportunity to meaningfully participate).

*The Trial Court's Consideration of the 192 Letters and the Imposition of the Sixty-year Sentence Was in Accordance with Due Process*

{17} In determining whether Defendant was prejudiced by the admission of the letters, given the absence of adequate notice to allow Defendant an opportunity to rebut the information contained therein, we turn first to the sentencing proceeding. *See Gardner*, 2003–NMCA–107, ¶ 42, 134 N.M. 294, 76 P.3d 47 (recognizing that the court's consideration of any evidence at sentencing must be in accordance with the constraints of due process). The record indicates that, prior to sentencing, Defendant introduced mitigating evidence for the court's consideration in his sentencing memorandum and motion to find mitigating factors. He submitted witnesses' statements and investigative summaries indicating that he was controlled by Richard Clappsy, that he feared Clappsy, and that he was under the influence of drugs prior to, and at the time of, the crime. He submitted the results of psychological assessments reviewing Defendant's troubled childhood which included exposure to drug abuse and violence. The psychological assessments opined that, due to his drug abuse and history, Defendant was passive and susceptible to Clappsy's influence. They also suggested that Defendant was depressed and angry. Defendant submitted letters from friends and relatives as to his peace-loving nature and good character.

{18} At the sentencing hearing, defense counsel reiterated the arguments contained in the memorandum and motion, claiming that Defendant was mostly guilty of extreme cowardice in not attempting to assist the Victim, and arguing that Defendant was not the instigator of the Victim's murder. Defendant's mother and father testified and requested leniency from the court. Defen-

dant also testified, expressing remorse for his actions and inactions in connection with the Victim's murder and asking for forgiveness. Defendant conceded that the Victim was a wonderful, special human being whose death was a great loss to her family and to the community.

{19} The Victim's sisters, mother, father, brother-in-law, brother, sister-in-law, and estranged husband all testified at the hearing. They offered compelling testimony as to the Victim's unique gifts and talents and spoke movingly about the profound loss they experienced as a result of the Victim's death. The prosecutor then urged the court to impose the maximum sentence possible under the plea.

{20} At the beginning of the hearing, when denying Defendant's motion for recusal and for a new sentencing hearing, the trial judge addressed the letters from the community. He stated that he considered the letters to be from members of the public interested in Defendant's sentencing. He acknowledged that there were "relationship issues" with the letters because they were not written by "victims" of the crime and expressly stated that he had noted that fact as he read the letters. He also indicated that the letters did not tell him anything he did not already know and that was not acknowledged by Defendant—that the Victim was well-loved and well-known.

{21} In sentencing Defendant, the trial judge did not mention the letters from the community. He noted that Defendant was instrumental in luring the Victim to the apartment and affecting the murder. He observed that Defendant had a chance to prevent the murder while away from the apartment and away from Clappsy's alleged threatening behavior, yet chose to do nothing. He indicated that he failed to see significant remorse on the part of Defendant and observed that Defendant chose to transfer his allegiance from the church to Clappsy. The judge further noted that the Victim would never be paroled from death and that Defendant played a significant part in causing her death. Because Defendant was a significant factor in the Victim's death by virtue of his inaction in preventing it and his

complicity in planning the kidnaping and murder, the court ordered that Defendant serve all of his sentences consecutively and refused to suspend any part of the sixty-year maximum sentence imposed.

### The Trial Court Did not Rely on the Ex Parte Letters in Sentencing Defendant

{22} Defendant would be entitled to re-sentencing if the lack of advance notice deprived him of the opportunity to rebut evidence that the trial court relied upon in determining his sentence. *See, e.g., United States v. Berzon,* 941 F.2d 8, 18 (1st Cir.1991) (recognizing that the defendant is entitled to a meaningful opportunity to comment on factual information on which his sentence is based and thus remanding to determine whether, at sentencing, the trial court relied on information ascertained during the sentencing of the defendant's co-defendant). However, in this case, the record indicates that the trial court relied on the evidence contained in Defendant's plea, the pre-sentence pleadings, and the testimony introduced at the sentencing hearing to determine Defendant's sentence. *See People v. Clark,* 124 Mich.App. 410, 335 N.W.2d 53, 55 (1983) (holding that the trial judge properly considered letters from the public urging that he impose the maximum sentence because (1) the letters were available in the court file for review; (2) the letters contained no factual information about the defendant; and (3) the judge's comments indicated that he was not swayed by the public claim but instead based his sentence on the proper factors). Nothing in the record indicates that the court used, or was influenced by, the letters from the public at large who had no connection with this case when determining Defendant's sentence. *See Oxborrow v. Eikenberry,* 877 F.2d 1395, 1400–1401 (9th Cir.1989) (holding that the defendant failed to establish a violation of his due process rights because the trial judge did not rely upon the unsolicited letters, but instead relied upon the pre-sentence reports and other pleadings for factual findings and observing that, even though the court referred to the outrage contained in the letters at sentencing, "such information was available from the pre-sentencing report").

{23} The record indicates that the trial judge exercised his discretion by disregarding unreliable statements. *See State v. Hernandez,* 1999–NMCA–105, ¶ 22, 127 N.M. 769, 987 P.2d 1156 (stating our presumption that a judge is capable of properly weighing the evidence, and disregarding any improper evidence in rendering a decision); *see also People v. Heredia,* 193 Ill.App.3d 1073, 140 Ill.Dec. 898, 550 N.E.2d 1023, 1030 (1989) (holding that letters to the court expressing the public's outrage that the defendant was only convicted of voluntary manslaughter instead of second degree murder and demanding imposition of the maximum sentence did not violate the defendant's right to an impartial sentence hearing because the court indicated that it considered the letters for what they were worth and it disregarded the general hearsay allegations of abuse). For example, in addressing a letter written by a municipal judge, the trial judge stated that he was not swayed by the letter and expressed disapproval that the writer used an official letterhead. The trial judge indicated that he would not assign such a letter significant weight unless the Victim was a close relative of the person writing the letter. Moreover, we disagree that the trial judge had to be influenced due to the sheer volume and repetitious nature of the letters in light of the more compelling testimony presented orally at the sentencing hearing from persons who were closely related to the Victim.

{24} For the same reasons, we disagree that submission of the letters rendered the sentencing proceeding unfair. *See Tomlinson v. State,* 98 N.M. 213, 215, 647 P.2d 415, 417 (1982) (recognizing that the trial judge must give a defendant the opportunity to speak before pronouncing the sentence for a non-capital felony conviction); § 31–18–15.1(A). As set forth above, Defendant introduced mitigating evidence in his sentencing memorandum and motion to find mitigating factors and in defense counsel's argument at the sentencing hearing. Defendant's parents testified at the sentencing hearing and Defendant also testified. Therefore, contrary to his contentions, Defendant was given the opportunity to speak before his sentence was imposed, and the trial court considered the evidence before it and disregarded any in-

competent evidence. *Heredia*, 140 Ill.Dec. 898, 550 N.E.2d at 1030 (observing that, "[g]enerally, when reviewing a bench trial, a court of review presumes that the judge considered only competent evidence"); *Hernandez*, 1999–NMCA–105, ¶ 22, 127 N.M. 769, 987 P.2d 1156.

### The Ex Parte Letters Did not Contain Misrepresentations of a Constitutional Magnitude

■ {25} Defendant claims that the letters contain misrepresentations. He raised this objection at the sentencing hearing. However, when the trial court indicated that Defendant was free to correct any errors, Defendant did not point to any errors. Likewise, at the hearing on Defendant's motion to vacate the sentence, after defense counsel had an opportunity to review the letters, the court noted it had yet to hear one single misstatement contained in the letters. Therefore, Defendant failed to adequately preserve this issue. *See State v. Varela*, 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (holding that a timely and specific objection is necessary to preserve error); *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997–NMCA–025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (observing that "[w]e review the case litigated below, not the case that is fleshed out for the first time on appeal." (citation omitted)).

{26} Even if Defendant had adequately preserved this issue, he has failed to show that he was sentenced based upon "misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). First, as discussed above, we observe that there is no indication that Defendant was sentenced based upon any information contained in the letters. Furthermore, there is nothing in the record or Defendant's briefs suggesting any material misinformation in the letters, much less a misrepresentation of constitutional magnitude. *See United States v. Corace*, 146 F.3d 51, 54 (2nd Cir.1998) (holding that to establish the sort of prejudice that would justify reversal, the defendant would have to show that the ex parte communications contained some inaccuracy on which the sentencing court might have relied).

{27} Many of the claimed misrepresentations concern matters that Defendant admitted in his plea or at sentencing. Defendant claims that the letters falsely claim that Defendant was an active participant by planning the murder with Clappsy, and by physically participating in the murder. However, Defendant admitted to active participation in the planning when he pled guilty to conspiracy to commit first degree murder. In his plea, he admitted that he agreed with someone else to commit murder and intended to commit murder. He also agreed that he either personally murdered or "helped or encouraged somebody else" to murder the Victim. Finally, in terms of physical participation, he admitted he helped to dispose of the Victim's body.

{28} Defendant makes incorrect factual contentions as to certain misrepresentations. For example, he claims that one letter states that Defendant used a knife. Review of that letter does not support Defendant's contention. Defendant also falsely characterizes the letters as stating that Defendant "indulg[ed] himself." Review of the letters indicate that only one uses this phrase and it is in the context of stating that Defendant facilitated the murder and allowed it to occur. Defendant had already admitted that he facilitated the murder by luring the Victim to the apartment and that he allowed the murder to occur by failing to notify authorities when he had the opportunity to do so. Review of the letters that supposedly cast aspersions on defense counsel, merely reveal claims that defense counsel painted Defendant in a favorable or golden light as a follower. Defense counsel's testimony at the sentencing hearing in fact does make such a portrayal.

{29} We also observe that the letters making statements as to Defendant's role in the murder are expressed in terms of the writer's opinion, not factual statements based on evidence, because the writers do not purport to have personal knowledge of the crime. These writers express their opinions that Defendant knew what he was doing and knew full well that Clappsy intended to kill

the Victim when Defendant lured her to the apartment. These statements are merely reactions to events as established by Defendant in his plea. For example, the letter alleging that Defendant had an "insidious scheme" is reflecting the fact that Defendant made an untruthful call to lure the Victim to the apartment. Defendant also claims that a number of letters falsely state that Defendant lied about knowing where the Victim's body was buried. Review of these letters indicate that they fault Defendant for failing to say where the body was at an earlier time by coming forward and note that Defendant could have assisted and did not. There is no indication that these writers are claiming personal knowledge of the facts of the case. Likewise, the writers who allegedly make false comments about recidivism and a pattern are merely making abstract statements without claiming personal knowledge about Defendant. None of these letters contain factual representations or misrepresentations; they are merely expressions of the public's affection for, and admiration of, the Victim and the public's outrage at the Victim's murder.

{30} We now turn to the few letters that make specific factual allegations concerning Defendant beyond the facts admitted in Defendant's plea, the sentencing memorandum and motion, and the oral testimony at the sentencing hearing. One is a letter from the operator of the Buffalo Exchange who wrote as to his interactions with Defendant and Clappsy when they brought in the Victim's clothes. Another is from a friend of the Victim who relates that the Victim confided in him about her fears of Clappsy and the threats he made to her. Defendant does not dispute the contentions contained in those letters and fails to make any showing that the information contained in them is incorrect.

{31} Finally, we note that if Defendant was concerned about misrepresentations, he could have requested a continuance to review the content of the letters and to prepare a rebuttal. *See United States v. Curran*, 926 F.2d 59, 62–63 (1st Cir.1991) (recognizing that the defendant has the right not to be sentenced on materially false information and

that the defendant was entitled to an opportunity to challenge the statements of fact contained in victim impact letters). Had Defendant requested a continuance, he could have precluded even the possibility of prejudice. *See United States v. Radix Labs., Inc.*, 963 F.2d 1034, 1042–1043 (7th Cir.1992) (observing that the issue of prejudice may have been avoided if the defendant's counsel had requested a continuance to review the newly introduced materials instead of simply objecting to the evidence). Contrary to Defendant's contention, he did not request a continuance and instead suggested that the only remedy was for the trial judge to recuse himself and for the case to be reset for sentencing.

{32} Furthermore, Defendant has failed to show that, if he had requested and received a continuance, he could have rebutted the allegations contained in the letters. As set forth in detail above, the Victim's family gave compelling testimony at the sentencing hearing as to the Victim's unique qualities and the loss experienced by the family and the community at large. Defendant made no attempt to rebut this evidence at the sentencing hearing. As the ex parte letters expressed sentiments similar to the oral testimony of the Victim's family, there is no indication that Defendant would have attempted, or been capable of, rebutting the information in the ex parte letters even if he had received prior notice of their content. *See United States v. Patrick*, 988 F.2d 641, 648–649 (6th Cir.1993) (holding that it was harmless error for the sentencing court to rely on information from another proceeding because the evidence introduced at the sentencing proceeding equally supported the judge's findings, and there is no indication that the defendant could have rebutted the improper information even if he had received advance notice of it).

{33} In conclusion, we hold that the prosecutor's actions in failing to divulge the letters until one to two days before trial were wrongful and should not be condoned. However, we affirm Defendant's sentence because there is no evidence that he suffered any prejudice from the admission of the letters without adequate prior notice especially since

**570**

the trial court did not rely upon them to determine the sentence..

*Ineffective Assistance of Counsel*

{34}  Defendant claims that he received ineffective assistance of counsel because his attorney did not review the letters before sentencing. We disagree. The test for ineffective assistance of counsel is whether defense counsel exercised the skill of a reasonably competent attorney. *See State v. Talley*, 103 N.M. 33, 36, 702 P.2d 353, 356 (Ct.App.1985). To establish a prima facie case of ineffective assistance of counsel, Defendant must show that (1) counsel's performance was deficient in that it "fell below an objective standard of reasonableness"; and (2) that Defendant suffered prejudice in that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lytle v. Jordan*, 2001–NMSC–016, ¶¶ 26–27, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). As set forth above, there is nothing to indicate that, had Defendant's counsel known of the letters in advance, she could have raised objections or furnished rebuttal to the information contained in the letters. Therefore, we hold that Defendant did not receive ineffective assistance of counsel. *See Duncan v. Kerby*, 115 N.M. 344, 348–49, 851 P.2d 466, 470–71 (1993) (holding that prejudice must be shown before a defendant is entitled to relief based on ineffective assistance of counsel).

**CONCLUSION**

{35}  For the foregoing reasons, we hold that the State should have notified Defendant about the letters before they were submitted to the trial court. However, failure to notify Defendant did not prejudice Defendant. Accordingly, we affirm the judgment and sentence of the trial court.

{36}  **IT IS SO ORDERED.**

BUSTAMANTE, C.J. and ROBINSON, J., concur.