This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                 **NO. 34,612**

**DANIEL CHRISTOPHER PLUMLEE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}     Defendant appeals from the district court's judgment and sentence, entered following a jury trial at which he was convicted of homicide by vehicle and obstructing, evading, or resisting arrest. This Court issued a calendar notice proposing

to summarily affirm in part, and to reverse in part. Defendant filed a memorandum in opposition to this Court's notice of proposed disposition, which we have duly considered. Unpersuaded, we affirm in part, reverse in part, and remand to the district court for resentencing.

{2}	Defendant raised three issues on appeal: (1) whether Defendant was incompetent to stand trial; (2) whether there was sufficient evidence to support the homicide by vehicle conviction; and (3) whether the district court erred in determining that homicide by vehicle was a serious violent offense under the circumstances of this case. [DS 6-10]

{3}	In our notice of proposed disposition, we recognized Defendant's assertion that he was incompetent to stand trial, apparently based on two forensic evaluations he underwent—one in 2008 and the other in 2013—in which the providers recommended that Defendant be found not competent to stand trial. [CN 2-3] We noted that following the 2013 evaluation—conducted in connection with the current case—the district court committed Defendant to the New Mexico Behavioral Health Institute (NMBHI) for a dangerousness evaluation. [CN 3] *See* NMSA 1978, § 31-9-1.2 (1999). We observed that following Defendant's dangerousness evaluation at NMBHI, the district court entered a stipulated order of competency. [CN 3] We noted that Defendant's docketing statement provided scant details regarding the stipulated

order, but we observed that Defendant did not appear to challenge the propriety of that order, nor did he indicate why we should go beyond that order in reviewing the district court's finding of competency. [CN 3-4] Thus, we proposed to conclude that Defendant had not met his burden on this issue on appeal, and we proposed to affirm. [CN 4] *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the trial court, and the party claiming error bears the burden of showing such error); *see also Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the burden is on the appellant to clearly demonstrate that the trial court erred).

{4}     Notably, in his memorandum in opposition, Defendant does not point to any specific errors in law or fact in our calendar notice on this issue. *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law."). Instead, Defendant now argues that he received ineffective assistance of counsel when his trial counsel failed to challenge the findings from NMBHI and stipulated to Defendant's competency. [MIO 2-3] To the extent that we consider the addition of this issue to be a motion to amend the docketing statement pursuant to Rule 12-208(F) NMRA, we

conclude that Defendant has not demonstrated a prima facie case of ineffective assistance of counsel; consequently, this claim is more properly brought through a petition for habeas corpus. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance."); *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 ("To establish a prima facie case of ineffective assistance of counsel, [the d]efendant must show that (1) counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'; and (2) that [the d]efendant suffered prejudice in that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (quoting *Lytle v. Jordan*, 2001-NMSC-016, ¶¶ 26-27, 130 N.M. 198, 22 P.3d 666)).

**{5}** Next, Defendant challenges the sufficiency of the evidence to support his conviction for homicide by vehicle. [MIO 3-9] In order to convict Defendant, the State was required to present evidence beyond a reasonable doubt that "[(1) D]efendant operated a motor vehicle in a reckless manner[,]" and that "[(2) D]efendant thereby

4

caused the death of Dawn Gwynne." [CN 4; RP 107] *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). The jury was further instructed that in order to find that Defendant operated a motor vehicle in a reckless manner, it must find that Defendant "drove with willful disregard of the safety of others and at a speed or in a manner that endangered or was likely to endanger any person." [CN 4-5; RP 109] We observed in our calendar notice that—in his docketing statement—Defendant did not provide information about any testimony regarding the circumstances surrounding the actual accident that resulted in the death of the victim. [CN 5] Thus, we suggested that Defendant had not provided this Court with sufficient information to apply our standard of review. [CN 5] *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 ("In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict.").

{6}    In his memorandum in opposition, Defendant has provided us with more detail regarding the facts presented at trial. It appears that testimony was adduced that: (1) a dark colored, midsize car drove through an intersection—running the stop sign—and was hit by a motorcycle; (2) the car did not stop following the accident; (3) a be-on-

the-lookout (BOLO) was issued for the car; (4) Hobbs Chief of Police McCall observed a car matching the BOLO, with damage to the rear quarter panel, entering the street from a gas station parking lot; (5) Chief McCall pulled behind the car—a Mazda driven by Defendant—and activated his emergency lights; (6) the Mazda did not stop, but instead drove through a number of stop signs without slowing down; (7) the Mazda drove the wrong way on a street for a short period of time; and (8) the Mazda was involved in an accident in an intersection—after again running the stop sign—apparently resulting in the death of the vehicle's passenger. [MIO 3-6]

{7}     Defendant also asserts that several facts were presented at trial in his favor, including: (1) other than one eyewitness who observed the first accident from two blocks away, no one identified Defendant or his vehicle as being involved in the first accident; (2) Chief McCall testified that the Mazda initially slowed down in response to the activation of his emergency lights, but then sped up; (3) Chief McCall also testified that the Mazda sounded as if it was having mechanical problems; (4) the Mazda did not travel at high speeds; and (5) Defendant testified that his passenger, Gwynne, had an outstanding warrant, and—in order to ensure that Defendant did not pull over for the police—stretched her leg over the middle console of the car and began pressing on the accelerator while Defendant attempted to brake. [MIO 4-6]

{8} Viewing the evidence in the light most favorable to the guilty verdict, we conclude that there was substantial evidence for the jury to conclude that Defendant drove his Mazda with willful disregard of the safety of others in a manner that endangered or was likely to endanger any person when he drove through a number of stop signs while fleeing from police, apparently driving the wrong way for a period of time, and that this ultimately resulted in the death of Gwynne. To the extent that Defendant relies on an alternate theory—that Gwynne was to blame for the reckless driving—to support his contention that there was insufficient evidence to support the conviction, we note that the jury was free to reject his version of what happened. *See State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071 (providing that conflicts in the evidence, including conflicts in the testimony of witnesses are to be resolved by the fact-finder; stating that the fact-finder is free to reject the defendant's version of events). Therefore, we conclude that Defendant's conviction for homicide by vehicle was supported by sufficient evidence.

{9} Finally, Defendant contends that the district court erred in determining that his homicide by vehicle conviction constituted a serious violent offense for purposes of the Earned Meritorious Deduction Act (EMDA), NMSA 1978, § 33-2-34 (2006, amended 2015). [DS 6; MIO 9-13] In our calendar notice, we noted that the charge of third degree homicide by vehicle is enumerated in the EMDA as a discretionary

serious violent offense that can be a "serious violent offense if the trial court so determines, based upon the nature of the offense and the resulting harm." [CN 6-7] *State v. Wildgrube*, 2003-NMCA-108, ¶ 36, 134 N.M. 262, 75 P.3d 862 (alteration, internal quotation marks, and citation omitted); *see* § 33-2-34(L)(4)(o). We further observed that the district court did not make any findings in the present case, and the judgment and sentence simply refers to "[Section] 33-2-34" as justification for the serious violent offense designation. [CN 7] Consequently, we proposed to reverse the portion of Defendant's sentence imposed pursuant to the district court's finding that the homicide by vehicle was a serious violent offense under Section 33-2-34(L)(4)(o), and to remand to the district court to enter more detailed findings in support of its determination. [CN 8] *See State v. Solano*, 2009-NMCA-098, ¶ 10, 146 N.M. 831, 215 P.3d 769 ("In order to designate the conduct of a particular defendant as a serious violent offense under the discretionary category, the district court must determine that the crime was committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." (internal quotation marks and citation omitted)); *see also State v. Morales*, 2002-NMCA-016, ¶¶ 17-18, 131 N.M. 530, 39 P.3d 747 (holding that the factual basis for designation of a serious violent offense must be reflected in findings made by the district court).

{10}     Defendant's memorandum in opposition simply reiterates his argument that the district court erred in determining that his homicide by vehicle was a serious violent offense. [MIO 9-13] Notably, Defendant's sole challenge to the analysis in our calendar notice is his contention that this Court should apply a de novo review of the facts of this case as they apply to the serious violent offense determination, without the district court having first made findings on this matter. [MIO 12-13] We decline to do so. *See Morales*, 2002-NMCA-016, ¶ 18 (stating that it is for the trial court in the first instance to make the required findings).

{11}     Therefore, for the reasons stated in this Opinion, as well as those provided in our calendar notice, we affirm Defendant's convictions and remand for resentencing in accordance with this Opinion.

{12}     **IT IS SO ORDERED.**

 

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JAMES J. WECHSLER, Judge**

**TIMOTHY L. GARCIA, Judge**