This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42181**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALEXIS CHEYNELLE CARTER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Stephen P. Ochoa, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from the district court's judgment and sentence, convicting her of aggravated assault with a deadly weapon, aggravated burglary, and misdemeanor battery. Defendant challenges the sufficiency of the evidence to support her conviction for aggravated assault with a deadly weapon and contends that she was denied the effective assistance of counsel.

## Sufficiency of the Evidence

**{3}** When assessing the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "We then determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted).

**{4}** Defendant contends that the evidence was inadequate to prove the first element of aggravated assault with a deadly weapon, which required the jury to find that Defendant "displayed a handgun in a menacing manner towards Taishon Hallmark." [BIC 10-14; RP 122] *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). We disagree.

**{5}** The State presented the testimony of Mr. Taishon Hallmark (Victim) who stated that Defendant and three other people showed up at Victim's home, intoxicated and wrongly believing there was a party at his house. [BIC 4] Victim explained they were mistaken and there was no party. [Id.] The visitors started to walk away; however, as Victim began to shut the door, Defendant and another visitor ran back to the door and kicked it open, striking Victim with the door. [Id.] Victim testified that he asked them to leave, but, instead of leaving, all four of the uninvited visitors reentered the home. [Id.] Victim explained he then repeatedly asked them to leave and told them he did not feel safe. [Id.] They continued to refuse to leave [BIC 5] and eventually Victim told them he was going to get his gun. [BIC 5] Victim testified that he was a retired member of the U.S. Army and was concerned about the visitors' reactions to him. [BIC 3, 5] Victim explained that he retrieved his AK-47 rifle and held it without pointing it at anyone, and again told the visitors to leave. [BIC 5] Three left the house, but Defendant remained. [Id.] Victim testified that Defendant grabbed the AK-47, and tried to fight him for it. [Id.]

**{6}** Defendant told Victim that she and the other visitors had a gun of their own, and she was going to get it. [Id.] Victim then handed the rifle to a housemate named Chris Olson, and retrieved a handgun he also owned and told his wife to call 911. [Id.] Mr.

Olson left the house and went in the backyard. [BIC 6] Victim testified that within a minute after Defendant left, she returned to the house with a handgun in her hand at her side. [Id.] Mr. Olson testified that when he saw Defendant again inside the house, she had lifted, and then lowered, what he believed was a semi-automatic handgun. [BIC 8] Mr. Olson testified that he did not see Defendant point the gun at anyone or specifically threaten anyone with it. [BIC 9] At this juncture, Victim turned on the flashlight on his gun. [Id.] Defendant then turned around and exited the house. [Id.] As the visitors drove away from Victim's home, Victim heard about ten gunshots. [Id.] Officers found eleven empty shell casings and one live round trailing down the street from Victim's home. [BIC 9]

**{7}** Based on these facts, we are not persuaded by Defendant's contention that she was "merely armed" and did not use the handgun in a menacing manner toward Victim, as the jury instruction required. [BIC 11; RP 122] Our Supreme Court has stated that "incidental exposure or mere possession" of a deadly weapon during an assault is not what the Legislature intended to criminalize. *State v. Zachariah G.*, 2022-NMSC-003, ¶ 19, 501 P.3d 451. An affirmative, direct, physical and verbal threat with a deadly weapon is also not necessarily required. *See id.* ¶¶ 17-20. Our Supreme Court held that, instead, the analysis of a defendant's use of a deadly weapon should be focused on whether there was a "facilitative use" of the deadly weapon, where it was "applied to advantage in furtherance of assault." *Id.* ¶ 18 (alteration, internal quotation marks, and citation omitted). The "facilitative use of a deadly weapon during an assault" may be established where "(1) a deadly weapon is present at some point during the encounter, (2) Victim knows or, based on the defendant's words or actions, has reason to know that the defendant has a deadly weapon, and (3) the presence of the weapon is intentionally used to facilitate the commission of the assault." *Id.* ¶ 19.

**{8}** Applying this test to the facts of the present case, the evidence showed that Defendant told Victim that she would return to his home with a gun, and she did. The evidence showed that Victim knew Defendant had a deadly weapon, given that Victim saw Defendant quickly reentering his home while visibly holding the gun in her hand. And, the evidence showed that Defendant caused Victim to believe that she was going to physically harm him with the gun given her threatening behavior—forcibly entering Victim's home with other uninvited people, repeatedly refusing to leave his home, remaining in his home after the other uninvited people left, grabbing Victim's rifle and trying to wrestle it from him even though it was not pointed at her, telling Victim she had her own gun, retrieving that gun, and quickly reentering Victim's home with that gun in her hand. We conclude that that Defendant used the gun in a sufficiently menacing manner toward Victim, such that "the presence of the weapon was intentionally used . . . to facilitate the commission of an assault." *Id.* ¶ 25. Thus, we are not persuaded that, under the circumstances, Defendant had to point the gun at Victim or directly say she would shoot him with the gun in order to be guilty of aggravated assault with a deadly weapon. *Cf. id.* ¶¶ 5-6, 24-25 (upholding the child's conviction of aggravated assault with a deadly weapon based on his menacing and pointed questions of the victim related to his potential use of the gun, even though he did not pull out the gun, point the

gun at the victim, tell the victim that he had the gun, or directly threaten the victim with the gun).

**{9}** Based on the foregoing, we hold that the evidence was sufficient to support Defendant's conviction for aggravated assault with a deadly weapon.

**Ineffective Assistance of Counsel Claims**

**{10}** Defendant asserts that she was denied the effective assistance of counsel. [BIC 14-16] Although Defendant lists four alleged errors in defense counsel's performance, she fails to include any analysis or citation to authority that might establish her claims. [Id.] We may deny Defendant relief on these grounds, alone. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (refusing to address undeveloped and conclusory arguments, reasoning that "[a] party cannot throw out legal theories without connecting them to any elements and any factual support for the elements" (internal quotation marks and citation omitted)); *State v. Yazzie*, 2009-NMCA-040, ¶ 5, 146 N.M. 115, 207 P.3d 349 (explaining that an appellate court need not consider an issue if no authority is cited to support it). Nevertheless, we attempt to address the merits of Defendant's four ineffective assistance of counsel claims below to the extent Defendant's deficient presentation of the issues might allow.

**{11}** "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* To establish a prima facie case of ineffective assistance of counsel, a defendant must show (1) "counsel's performance was deficient in that it fell below an objective standard of reasonableness"; and (2) "that [the d]efendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted).

**{12}** First, Defendant asserts that defense counsel failed to object to the jury instructions for aggravated assault with a deadly weapon. [BIC 15] Defendant does explain what she believes was improper about the jury instruction and does not discuss either factor in the test for ineffective assistance of counsel. We see no obvious error in the jury instructions, *see* UJI 14-305 NMRA, and will not guess at the nature of the claimed error. *See State v. Candelaria*, 2019-NMCA-032, ¶ 48, 446 P.3d 1205 (declining to review an undeveloped claim because "we will not review unclear arguments, or guess at what a party's arguments might be" (alterations, internal quotation marks, and citation omitted)). Thus, we hold that Defendant has not established a prima facie claim for the failure to object to the jury instruction.

**{13}** Second, Defendant asserts that defense counsel was ineffective when he failed to object to the prosecutor's questions to Victim asking what Victim had concluded from Defendant's actions that evening when Defendant returned to his home with a handgun. [BIC 15] Victim responded that he concluded Defendant "wanted to do something, harm someone, scare someone." [1-29-24 CD 3:06:15-3:06:53] Victim also stated that Defendant was successful in scaring him when she returned with a handgun. [Id. 3:06:53-3:06:58] Defendant claims the prosecutor's questions improperly required Victim to speculate about Defendant's motives and "'conclude that she met the elements for aggravated assault." [BIC 15] We disagree that this line of questioning was improper, and we are not persuaded the prosecutor asked Victim for his opinion on whether Defendant was guilty of aggravated assault.

**{14}** Rather, the prosecutor properly asked an open-ended question about what Victim believed Defendant would do when she returned to his house with a handgun, based on what Victim had observed Defendant do up to that time, and how Defendant's actions made Victim feel. [1-29-24 CD 3:06:15-3:06:58] The questions did not lead Defendant to any particular answer and did not ask for an opinion on Defendant's guilt. The questioning was designed to simply assist the jury in determining whether, based on Victim's perception of the events, Defendant's conduct caused Victim to believe Defendant was about to intrude on his bodily integrity or personal safety, as the second element of aggravated assault was instructed. [RP 122] Victim's answers constituted relevant and proper lay witness opinion testimony. *See* Rule 11-401 NMRA (providing that relevant evidence constituted evidence that "has any tendency to make a fact more or less probable than it would without the evidence, and . . . the fact is of consequence in determining the action"); Rule 11-701 NMRA (providing that lay opinion testimony "is limited to one to that is . . . rationally based on the witness's perception, . . . helpful to clearly understanding the witness's testimony or to determining a fact in issue, and . . . not based on scientific, technical, or other specialized knowledge"); Rule 11-704 NMRA ("An opinion is not objectionable just because it embraces an ultimate issue."). Because we see no cause for an objection, we conclude that Defendant has not established counsel error or prejudice.

**{15}** Third, Defendant contends she was denied effective assistance when her defense counsel failed to investigate, pursue any defense, or question Victim on his self-reported traumatic brain injuries (TBIs) and faulty memory. [BIC 15] Defendant does not explain how pursuing Victim's cognitive abilities might have changed the outcome, particularly in light of the fact that the testimony of Mr. Olson, the other eye witness who testified at trial, gave an account of the events that mirrored that of Victim's. [BIC 7-9] Any conjecture regarding what an investigation or line of questioning would have uncovered and how it might have impacted the case is purely speculative. *See State v. Ortega*, 2014-NMSC-017, ¶¶ 57, 59, 327 P.3d 1076 (rejecting claims of ineffective assistance of counsel regarding the failure to interview witnesses because the arguments were speculative based on the bare record). Thus, we are not persuaded that Defendant has made a showing of error and prejudice.

**{16}** Fourth and lastly, Defendant argues her attorney failed to present any evidence or call any witnesses. [BIC 15-16] Defendant admits that the record does not contain information on what any possible witnesses might have testified to or why they were not called. [BIC 16] It is well established that "[t]he decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 47, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). Defendant's generalized assertion is insufficient to establish counsel error and prejudice. *See Ortega*, 2014-NMSC-017, ¶¶ 57, 59; *State v. Crain,* 1997-NMCA-101, ¶ 33, 124 N.M. 84, 946 P.2d 1095 (stating that the defendant had not made a prima facie case of ineffective assistance of counsel because the record failed to establish that a defense expert was available to testify in support of the defendant's theory of the case).

**{17}** As Defendant recognizes, ineffective claims that are not adequately developed in the record are more appropriately pursued in habeas or other collateral proceedings. [BIC 16] *See Roybal*, 2002-NMSC-027, ¶ 19. Based on the foregoing, we hold that Defendant has not established her claims of ineffective assistance of counsel.

**CONCLUSION**

**{18}** For the reasons stated above, we affirm the district court's judgment and sentence.

**{19}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**