This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37841

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOSHUA C. MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}**     Following a jury trial, Defendant Joshua Martinez was convicted of aggravated battery with a deadly weapon, possession of a firearm by a felon, and possession of marijuana. Defendant appeals his conviction for aggravated battery with a deadly weapon. We affirm Defendant's conviction. However, we remand the case to the district court with instructions to correct an error in the judgment and sentence.

## BACKGROUND

**{2}**     Officer Antonio Orozco of the Clovis Police Department was dispatched to a home in response to a call referencing an injured person. Officer Orozco arrived at the home approximately one minute after he was dispatched. Upon arrival, he made contact with Victim outside of the home who was holding a towel with a red substance on it to her head to cover an apparent wound. Victim's son (Son) was also outside when Officer Orozco arrived.

**{3}**     Immediately upon Officer Orozco's arrival, Son informed him that Victim was shot by Son's father. As Victim waited for emergency medical assistance, she identified Son's father as Defendant. Victim further stated that Defendant fled the home on foot and described his clothing.

**{4}**      Officer Jacob Bonner located Defendant a few blocks away from the home. Officer Bonner discovered that Defendant had a 9mm firearm on his person. He ordered Defendant to drop the firearm and placed Defendant under arrest. Defendant had a dried red substance[1] on the watch he was wearing at the time of his arrest. Defendant asked Officer Bonner, "Is she alive? Is she okay?" but did not identify the individual to whom he was referring.

**{5}**     Defendant was transported to the Clovis Police Department for questioning. A portion of Defendant's transport was captured on video, which showed Defendant visibly upset and exhibiting violent behavior. Defendant became increasingly emotional and threatened to engage in self-harm. In an effort to calm Defendant down, Officer Bonner told him, "You're better than that," to which Defendant replied, "No, she's better than that." Again, Defendant did not identify the individual to whom he was referring.

**{6}**     Detective Dale Rice made contact with Victim at the hospital, where he photographed her injuries. Detective Rice also photographed the interior of the home where Officer Orozco was dispatched. The interior of the home was in disorder, and Detective Rice observed a spent 9mm shell casing and a "fresh" red substance on several surfaces. A 9mm bullet was also recovered from the scene.

**{7}**     Defendant was charged with, among other things, aggravated battery against a household member with a deadly weapon, contrary to NMSA 1978, Section 30-3-16(C) (2008, amended 2018). During voir dire, apparently indicating that Victim may be reticent to testify, the prosecutor asked a potential juror if "victims are usually forthcoming if they are in an abusive relationship." Following some related questions, the prosecutor then attempted to ask the venire if any of them would begrudge either party because Victim was still "very much in love with [Defendant]." By way of objection, defense counsel interrupted this question. The district court overruled the objection and allowed the question to be asked in a slightly different manner.

---

[1]The district court ruled that the red substances identified in the home and on Defendant's watch could not be referred to definitively as "blood" because the State did not intend to offer any scientific or medical evidence that the substances were indeed blood.

**{8}** The following morning, prior to opening statements, Defendant moved the district court to exclude from evidence the video taken on Officer Orozco's lapel camera on the day he made contact with Victim and Son. Specifically, Defendant argued that the statements contained in the video were inadmissible hearsay. Defendant was particularly concerned about the presence of Son in the video, arguing that though Son's statements overlapped with those of Victim, no hearsay exception would permit the admission of the video because Son was not a trial witness identified by the State and as such Son's statements were not sufficiently reliable. After reviewing the video, taking testimony from Officer Orozco, and hearing the parties' arguments, the district court concluded that the statements of Victim and Son in the video were admissible as excited utterances.

**{9}** Despite being served with a testimonial subpoena, Victim ultimately did not appear to testify at trial. After the district court ruled on the excited utterance statements, Victim failed to appear and defense counsel alerted the district court that Victim had indeed expressed an unwillingness to testify against Defendant. The State informed the district court that, in its estimation, it had ample evidence to proceed without Victim's testimony. However, the district court issued a material witness warrant in an effort to secure Victim's presence before the close of trial. Defendant renewed his motion to exclude Officer Orozco's lapel camera video from evidence, this time basing his objection on Victim's absence and arguing that his Sixth Amendment right to confrontation would be violated if Victim's statements from the video were admitted. The district court again denied the motion, as it had already ruled that the statements of both Victim and Son contained in the video qualified as excited utterances. Victim's presence was not secured by the close of the State's evidence.

**{10}** Before the jury retired to deliberate, the State amended the charge of aggravated battery against a household member with a deadly weapon to aggravated battery with a deadly weapon, as insufficient evidence was presented that Victim was a member of Defendant's household. Defendant moved for a directed verdict on the charge of aggravated battery with a deadly weapon, which the district court denied. The jury found Defendant guilty of this charge, and he now appeals this conviction. We reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**{11}** Defendant raises four issues on appeal: (1) Officer Orozco's lapel camera video was improperly admitted into evidence; (2) insufficient evidence supports Defendant's conviction for aggravated battery with a deadly weapon; (3) the prosecutor engaged in misconduct during voir dire and closing argument; and (4) there is an error in the judgment and sentence. We address each of these issues in turn.[2]

---

2Defendant also advances a cumulative error argument. "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. In this case, we conclude that the prosecutor made improper statements during closing argument

## I.    The Lapel Camera Video Was Properly Admitted

**{12}**    Defendant argues that Officer Orozco's lapel camera video was improperly admitted into evidence because it contained inadmissible hearsay. Specifically, Defendant contends that the statements of Victim and Son in the video are too unreliable to be admissible as excited utterances, because neither Victim nor Son were witnesses at trial and thus could not testify to the context surrounding the events in issue. Defendant further argues that the admission of the video violated his confrontation rights guaranteed by the United States and New Mexico constitutions because the absence of Victim and Son at his trial denied him a meaningful opportunity to dispute the State's case. For the reasons that follow, we disagree with both arguments.[3]

### A.    The Statements of Son and Victim Were Admissible as Excited Utterances

**{13}**    "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted); *see State v. Kincheloe*, 1974-NMCA-126, ¶ 9, 87 N.M. 34, 528 P.2d 893 ("In order to establish an abuse of discretion, it must appear that the trial court acted unfairly, arbitrarily or committed manifest error.").

**{14}**    "Hearsay" is "a statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C) NMRA. Hearsay is inadmissible unless an exception applies. *See* Rule 11-802 NMRA. An "[e]xcited utterance" is an exception to the hearsay rule and is defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress or excitement that it caused." Rule 11-803(2) NMRA.

---

but that these improper statements do not constitute fundamental error. While we reject Defendant's remaining claims of error, we also note that Defendant does not sufficiently expand upon his position that an accumulation of errors rendered his trial unfair, as his argument in this regard is limited to two sentences. Therefore, concluding that no reversible error occurred and that Defendant's cumulative error argument is undeveloped, we do not reach this claim. *See State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("The doctrine of cumulative error is to be strictly applied, and cannot be invoked if the record as a whole demonstrates that the defendant received a fair trial." (alterations, internal quotation marks, and citation omitted)); *State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 ("This Court will not rule on an inadequately-briefed issue where doing so would require this Court to develop the arguments itself, effectively performing the parties' work for them." (internal quotation marks and citation omitted)).
3Defendant also states that "[t]he admission of the statements through the lapel video was not harmless[.]" However, because we conclude that this evidence was properly admitted, we do not conduct a review for harmless error. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 008 (explaining the applicability of harmless error review).

**{15}** "[T]o constitute an excited utterance, the declaration[s] should be spontaneous, made before there is time for fabrication and made under the stress of the moment." *State v. Flores*, 2010-NMSC-002, ¶ 47, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 87, 478 P.3d 880. "The trial court has wide discretion in determining whether the utterance was spontaneous and made under the influence of an exciting or startling event." *State v. Balderama*, 2004-NMSC-008, ¶ 51, 135 N.M. 329, 88 P.3d 845 (alteration, internal quotation marks, and citation omitted). Among the factors to consider when deciding if statements qualify as excited utterances are:

> [H]ow much time passed between the startling event and the statement, and whether, in that time, the declarant had an opportunity for reflection and fabrication; how much pain, confusion, nervousness, or emotional strife the declarant was experiencing at the time of the statement; whether the statement was self-serving; and whether the statement was made in response to an inquiry.

*Id.* (alterations, internal quotation marks, and citations omitted).

**{16}** The district court weighed these factors[4] on the record before finding that the statements of Victim and Son in the video were admissible as excited utterances. Officer Orozco's testimony at trial established that he arrived at Victim's home approximately one minute after he was dispatched. The lapel camera video shows Victim and Son walking together from the home toward Officer Orozco. Both are visibly emotional and Victim voluntarily comments on her physical symptoms and pain. Moreover, Son, unprompted by any questions directed to him, stated, "She got shot," in reference to Victim, immediately upon Officer Orozco's arrival.

**{17}** Several of the statements from both Victim and Son, such as Defendant's identity and the description of his clothing, were made in response to questions solicited by Officer Orozco. However, "[a]lthough the fact that the statements were made to police can . . . undermine their spontaneity, the mere fact that the statements were responses to questions does not necessarily defeat a finding that they were excited utterances." *State v. Hernandez*, 1999-NMCA-105, ¶ 15, 127 N.M. 769, 987 P.2d 1156. These statements were made within seconds of the unprompted comments upon Officer Orozco's arrival. *See id.* (stating that even when "circumstances [do] not necessitate a finding of excited utterance," if the circumstances are "sufficient to support such a finding[,]" we will "uphold the trial court's exercise of its broad discretion"). We are therefore satisfied that the district court did not abuse its discretion by admitting the

---

[4]Defendant directs us to nonbinding authority and asks us to consider additional factors in evaluating purported excited utterances. Under the facts of this case, however, we are satisfied that our precedent sufficiently guides our analysis. *See State v. Gonzales*, 1990-NMCA-040, ¶ 30, 110 N.M. 218, 794 P.2d 361 ("Until we are faced with a case in which there is a reason to depart from a precedent, we will continue to apply it.").

statements of Victim and Son contained in Officer Orozco's lapel camera video as excited utterances.

## B. Defendant's Right to Confrontation Was Not Violated

**{18}** "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Lopez*, 2013-NMSC-047, ¶ 7, 314 P.3d 236 (internal quotation marks and citation omitted). The Sixth Amendment to the United States Constitution, applicable to the states by the Fourteenth Amendment, and its New Mexico counterpart, N.M. Const. art. II, § 14, provide that it is the right of a defendant in a criminal trial "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; N.M. Const. art. II, § 14. "Under the Confrontation Clause, an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citations omitted).

**{19}** To determine if statements are testimonial, we engage in a "fact-specific inquiry." *State v. Romero*, 2006-NMCA-045, ¶ 66, 139 N.M. 386, 133 P.3d 842. Statements made at the scene of a police response "should be considered testimonial if there are articulable indications that either the officer or the declarant was trying to procure or provide testimony." *Id.* However, absent these indications, "on-scene statements to police officers in response to initial questioning will generally be non[]testimonial[.]" *Id.* Further, "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *State v. Romero*, 2007-NMSC-013, ¶ 7, 141 N.M. 403, 156 P.3d 694 (emphasis, internal quotation marks, and citation omitted).

**{20}** We conclude that the statements of Victim and Son contained in Officer Orozco's lapel camera video were made in response to an ongoing emergency and not for the purpose of securing testimony, and thus are nontestimonial. Officer Orozco's lapel camera video was taken as he was responding to a call referencing an injured person. As soon as he arrived, he made contact with Victim and Son, who were waiting for him outside the home, and inquired into Victim's condition. As discussed above, Son, immediately and unprompted by direct questioning, stated that Victim was shot. In response to Officer Orozco's follow-up questions, Son informed him that Son's father—later identified as Defendant—shot Victim and that Defendant's whereabouts was unknown. Victim further informed him that Defendant fled the scene on foot and described his clothing. Furthermore, throughout the course of this exchange, Victim was visibly injured and in pain, and inquired of Officer Orozco the location of emergency medical personnel. Taken together, these facts are indicative of an ongoing emergency. Therefore, we hold the statements contained in the video did not violate Defendant's confrontation rights and were properly admitted at trial.

## II. The Evidence Was Sufficient to Support Defendant's Conviction

**{21}** Defendant argues that the evidence presented at trial was insufficient to sustain his conviction for aggravated battery with a deadly weapon. To convict Defendant of aggravated battery with a deadly weapon, the jury was instructed, in relevant part, that the State was required to prove that he (1) touched or applied force to Victim by shooting her with a firearm; and that he (2) intended to injure Victim. *See* UJI 14-322 NMRA; *see also State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alteration, internal quotation marks, and citation omitted)). Defendant contends that these elements were not met because the State did not present evidence of the circumstances surrounding the shooting, which in turn required the jury to base its verdict on conjecture. We are not persuaded, and conclude that substantial evidence supports both of the elements Defendant challenges.

**{22}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Rojo*, 1999-NMSC-001, ¶ 19. "[W]e resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* "The question before us as a reviewing court is not whether we would have had a reasonable doubt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170.

## A.     Touch or Application of Force

**{23}** With regard to touch or application of force, the statements of both Victim and Son to Officer Orozco upon his arrival at the scene, outlined more fully above, demonstrate that Defendant used a firearm to shoot Victim. A 9mm bullet and spent 9mm shell casing were discovered at the scene, as was a red substance on a number of surfaces. The evidence also established that Defendant was located by Officer Bonner a few blocks away from the scene, and that he had a 9mm firearm on his person and a dried red substance on his watch. Additionally, photographs of Victim's injuries were entered into evidence. Taken together, this is sufficient evidence for the jury to conclude that Defendant touched or applied force to Victim by shooting her with a firearm.

## B.     Intent to Injure Victim

**{24}** With regard to Defendant's intent to injure Victim, we remain cognizant that "[i]ntent is rarely provable by direct evidence. If there are reasonable inferences and sufficient direct or circumstantial facts, then the issue of intent is determinable by the jury and will not be reweighed by the reviewing court." *State v. Jennings*, 1984-NMCA-051, ¶ 14, 102 N.M. 89, 691 P.2d 882; *see State v. Wasson*, 1998-NMCA-087, ¶ 12,

125 N.M. 656, 964 P.2d 820 ("A defendant's knowledge or intent generally presents a question of fact for the jury to decide."). The evidence presented at trial established that after his arrest, Defendant asked "Is she alive? Is she ok?" He then stated, "She's better than that," and expressed a desire to engage in self-harm. Though Defendant did not mention Victim by name following his arrest, the circumstances surrounding Defendant's questions and statements were such that the jury could reasonably infer that he was making reference to Victim. *See State v. Romero*, 1968-NMCA-078, ¶ 17, 79 N.M. 522, 445 P.2d 587 ("An inference is merely a logical deduction from facts and evidence." (internal quotation marks and citation omitted)). Finally, the jury was also able to observe the state of Defendant's emotions and his violent behavior following his arrest. We are therefore satisfied that sufficient evidence was presented to allow the jury to conclude that Defendant intended to injure Victim.

### III. The Prosecutor Did Not Engage in Misconduct Such That Defendant's Conviction Cannot Stand

**{25}** Defendant argues that the prosecutor made inappropriate comments during voir dire and closing argument. Defendant contends that this commentary was so pervasive that he was denied a fair trial. For the reasons that follow, we disagree.

### A. Voir Dire

**{26}** Where prosecutorial misconduct is alleged as a result of questioning during voir dire, our review is for an abuse of discretion. *See State v. Johnson*, 2010-NMSC-016, ¶¶ 33-34, 148 N.M. 50, 229 P.3d 523; *see also State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (noting that preserved issues of alleged prosecutorial misconduct are reviewed for an abuse of discretion). We apply this deferential standard "because assuring the selection of an impartial jury may require that counsel be allowed considerable latitude in questioning prospective jury members." *Johnson*, 2010-NMSC-016, ¶ 34 (alteration, internal quotation marks, and citation omitted). "We will reverse only if a clear abuse of discretion by the district court in the conduct of voir dire resulted in prejudice to the defendant." *Id.*

**{27}** Defendant argues that it was misconduct for the prosecutor to ask the venire if the fact that Victim still had romantic feelings for Defendant would cause any of them to begrudge either party. Yet, during voir dire it does not appear from the record that the prosecutor was aware that Victim would not be present to testify the following day. Defendant further asserts that the prosecutor's inquiry regarding potential jurors' experiences with domestic violence victims during voir dire was inappropriate. However, "[t]he purpose of voir dire is to enable the parties to determine whether there is any bias or prejudice on the part of prospective jurors to enable counsel to intelligently exercise challenges." *Sutherlin v. Fenenga*, 1991-NMCA-011, ¶ 36, 111 N.M. 767, 810 P.2d 353; *see also* UJI 14-120, use note 4(c) (explaining that voir dire "questioning by the attorneys is generally used for inquiry concerning the jurors' attitudes and opinions about case-related issues (*for example, burden of proof, self*[-]*defense, alcohol use, etc.*)"). Given that the topics Defendant complains of in the prosecutor's questioning

were related to issues in the case and designed to uncover prejudicial feelings of potential jury members, we conclude that Defendant has failed to demonstrate that such questioning was unfair or prejudicial to him. *See State v. Martinez*, 1983-NMSC-018, ¶ 10, 99 N.M. 353, 658 P.2d 428 ("As a reviewing court, we are bound by law which states that the extent of voir dire is left to the sound discretion of the trial court and limited only by the essential demands of fairness."); *see also State v. Malloy*, 2001-NMCA-067, ¶ 21, 131 N.M. 222, 34 P.3d 611 ("Mere assertion of prejudice is not a showing of prejudice."). Accordingly, we cannot conclude that the district court abused its discretion by allowing questions on these topics. *See Sutherlin*, 1991-NMCA-011, ¶ 36 (stating that the district court "is invested with broad discretion over the scope of voir dire").

## B.  Closing Argument

**{28}**   We review unpreserved claims of prosecutorial misconduct for fundamental error. *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814. In conducting our review, "we begin with the presumption that the verdict was justified, and then ask whether the error was fundamental." *State v. Sosa*, 2009-NMSC-056, ¶ 37, 147 N.M. 351, 223 P.3d 348. It is the defendant's burden to establish fundamental error. *Id.* ¶ 41. "[W]e will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.* ¶ 35. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Allen*, 2000-NMSC-002, ¶ 95 (internal quotation marks and citation omitted). To hold that fundamental error occurred, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*, 2009-NMSC-056, ¶ 35 (internal quotation marks and citation omitted).

**{29}**   Even in cases where the defendant fails to object to prosecutor's statements during trial and we are limited to fundamental error review, we consider "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.* ¶ 26. In doing so, we evaluate the statements "objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.*

**{30}**   Defendant contends that a number of statements made by the prosecutor during the State's closing and rebuttal arguments constitute prosecutorial misconduct.[5] We identify the following statement made in closing argument as improper:

---

[5]Defendant also contends that the prosecutor engaged in misconduct during the State's opening statement. However, after thorough review of Defendant's argument and the record, we do not identify particular language in the prosecutor's opening statement that we recognize as improper. Defendant directs us only to the prosecutor's remark that Victim was Defendant's "long-time girlfriend." Without more, we fail to see how Defendant suffered prejudice as a result of this comment. *See In re Ernesto M.*

In that excitement, your mom just got shot. Your parents are fighting. Do you have enough time to really sit down and think and come up with a lie? Do you really even want to lie about your dad shooting your mom? What child wants to live in that reality? What child wants to lie about that? There is no reason for that to be a lie.

We identify the following statements made during the State's rebuttal closing argument as improper:

And then, red splatter which appears to be similar to that of blood. . . . [Victim] tries to . . . get away from [Defendant], leaving blood splatter on the door of the bathroom as she tries to leave. Then she tries to get to the front door, creates blood splatter as she's getting closer.

What a disservice to [Victim]. What a disservice to other domestic violence victims, and [Victim] who's still in the cycle and refuses to testify against [Defendant].

[L]et's look at the photos. Ladies and gentlemen, if [Victim] is lying, what are these? They are defensive wounds. How are you making that up? What are you lying about? She was protecting herself. There's no way around that. She didn't do that to herself. She's not lying. That's real. And then we have the wound itself to confirm everything you already know based on that video. And then, finally, this that shows the escalation of the abuse.

She has blood from the mouth, from the nose. That's not from her head. That's multiple injuries that happened. She was continued [sic] to be beaten. She has a bruise, and finally, the climax of all of this violence: shot in the head.

For whatever reason, and I can't explain this, [Victim] does not have the ability to protect herself. But you as the jurors do have the right to stand up and protect her from not only herself, but also [Defendant]. This behavior is not okay, and we ask that you stand up against this domestic violence and for you to find [Defendant] guilty of aggravated battery with a deadly weapon.

**{31}** In light of these statements, it is necessary that we reiterate what we have long held: it is always improper to refer to facts not in evidence during closing argument, and attorneys may never direct the jury to send a message with its verdict. *See State v. Torres*, 2012-NMSC-016, ¶ 9, 279 P.3d 740 (stating that "the prosecutor's reference to

---

*Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d. 318 ("An assertion of prejudice is not a showing of prejudice."). Information that Victim and Defendant had a relationship was made known to the venire during voir dire, and Defendant was convicted of aggravated battery with a deadly weapon without the household member element. Therefore, we offer no further analysis in this regard.

information outside of evidence . . . [w]as unacceptable"); *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (stating that during closing argument "remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument"); *State v. Cooper*, 2000-NMCA-041, ¶ 15, 129 N.M. 172, 3 P.3d 149 ("Prosecutorial commentary that urges a jury to convict for reasons other than the evidence defies the law and undermines the integrity of a verdict."). By disregarding the district court's ruling to refrain from referring to the red substance found in Victim's home as "blood," describing an "escalation of abuse," and asking the jury to "stand up against" domestic violence, the prosecutor here failed to scrupulously adhere to these principles. Indeed, "[p]rosecutors do not have license to make improper and prejudicial comments with impunity." *State v. Sena*, 2020-NMSC-011, ¶ 31, 470 P.3d 227.

**{32}** We now turn to the *Sosa* factors to determine whether these improper statements amount to fundamental error*.* With regard to the first factor, Defendant does not allege, and we cannot identify, a particular constitutional protection offended by the prosecutor's statements. Because there is no identified constitutional violation, in evaluating the second factor, "we look at the length and repetition of the comment[s] to determine whether it was so pervasive as to clearly distort the body of evidence before the jury." *Sosa*, 2009-NMSC-056, ¶ 38. We cannot say that it was. The statements we hold improper accounted for a small part of the prosecutor's closing argument that lasted more than fifteen minutes, and went unchallenged by defense counsel. And, as explained below, a portion of these statements was invited by defense counsel. Therefore, while perhaps not "isolated and brief," we are unable to conclude that the prosecutor's remarks were ubiquitous. However, we take care to note that, like our Supreme Court in *Sosa*, "[o]ur view might be different had defense counsel objected at trial, but [s]he did not." *Id.*; *see State v. Pennington*, 1993-NMCA-037, ¶ 32, 115 N.M. 372, 851 P.2d 494 (stating that where improper commentary by the prosecution during closing argument is alleged, "[t]he proper procedure [is] to object to the statements at the time the prosecutor made them.").

**{33}** Finally, with regard to the third factor, during Defendant's closing argument, in reference to Victim's absence and her statements contained in Officer Orozco's lapel camera video, defense counsel stated the following:

> [Victim] is not here. She didn't bother to come to court. You didn't get to hear her testify. I wish that I could tell you people never lie to the police, but I would be lying to you if I told you that. I wish that people didn't lie to the police about things that happen in domestic violence cases, when they're upset with their partner, but then I would be lying to you.

Therefore, to the extent Defendant complains of the prosecutor's statements during rebuttal argument on Victim's absence and domestic violence within Victim and Defendant's relationship, we conclude that defense counsel invited a response. *See Sosa*, 2009-NMSC-056, ¶ 33 ("[W]e are least likely to find error where the defense has 'opened the door' to the prosecutor's comments by its own argument or reference to facts not in evidence.").

**{34}** On balance, based on the record before us and when considered alongside the evidence presented at trial, we cannot conclude that Defendant is "indisputably innocent" and we are satisfied Defendant's conviction is not "fundamentally unfair[.]" *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused"); *see also State v. Reynolds*, 1968-NMCA-024, ¶ 5, 79 N.M. 195, 441 P.2d 235 ("The innocence of [the] defendant is not undisputable; it does not shock the conscience to permit the conviction to stand."). Thus, Defendant has not convinced us that the prosecutor's remarks during closing argument constitute fundamental error.

## IV.    The Judgment and Sentence Must Be Corrected

**{35}** Defendant correctly notes, and the State does not object to the fact that the State was unable to prove at trial that Victim was a member of his household. Therefore, the charge of aggravated battery with a deadly weapon, for which he was convicted, proceeded to the jury without the household member element. However, the judgment and sentence entered by the district court reflects the conviction for this charge as aggravated battery with a deadly weapon against a household member. We therefore instruct the district court to correct the judgment and sentence to conform to the verdict entered by the jury.

## CONCLUSION

**{36}** For the foregoing reasons, we affirm Defendant's conviction for aggravated battery with a deadly weapon. We remand the case to the district court with instructions to correct the error in the judgment and sentence.

**{37}    IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**